## O'Niel *vs.* The Buffalo Fire Insurance Company.

In an application for fire insurance, and in the policy issued, the premises were described as *occupied by a certain individual as a private residence.* Held, that this did not amount to a warranty of the continuance of the occupation during the risk, and therefore that the insurers were liable, although before the loss the occupant had removed and left the premises vacant.

A warranty in the contract of insurance may be either affirmative, as where the insured undertakes for the truth of some existing fact, or promissory, as where he undertakes to perform some executory stipulation. *Per* Ruggles, J.

In cases of marine insurance the policy is a commercial contract, and is to be construed according to the import of the words as they are understood among merchants. *Per* Ruggles, J.

In the contract of insurance, if a fact be in plain terms expressly warranted, its materiality to the risk is of no importance. It becomes a condition precedent. *Per* Ruggles, J.

But where a matter is sought to be included by *implication* in the warranty, it must be plainly material to the risk : otherwise an intention to warrant in respect to the matter can not be imputed to the parties.

In the conditions of insurance annexed to a fire policy, certain trades were specified as hazardous or extra hazardous, and houses building or repairing were mentioned as insurable only at special rates ; and oils and turpentine were classed among articles hazardous or extra hazardous. The policy, by its terms, was to become void, if the building should be used for any *trade or purpose* denominated hazardous or extra hazardous, or specified in the special rates of insurance annexed, or for the purpose of *storing any articles* denominated hazardous or extra hazardous. At the time of the loss the dwelling insured was being repaired and painted, and for that purpose oils and turpentine were introduced. *Held*, that the insurers were liable for the loss.

The ordinary repairs upon a building insured are covered by such a policy ; the object of the restraining clause being only to prevent the habitual use of the building for the specified trade or purpose, and the habitual deposit in store of the specified articles, not their occasional introduction for the purpose of repairs and painting.

Where a fire policy required the insured to produce a certificate of the loss under the hand of a magistrate, notary public, or clergyman *nearest* to the place of fire, and the insured, after a loss, produced the certificate of a magistrate residing *near, but not nearest,* to the place, and the insurers objected to paying the loss, *but not on that ground ;* Held, that they had waived that objection.

A formal defect in the preliminary proofs must be pointed out at the time they are presented, so that the defect may be supplied. Otherwise the objection will come too late.

O'NEIL sued The Buffalo Fire and Marine Insurance Company, in the recorder's court of the city of Buffalo, on a fire policy, and had a verdict and judgment. The supreme court affirmed the judgment on error brought, and the defendants appealed to this court.

*C. H. S. Williams,* for appellants.

*E. Cook,* for respondents.

RUGGLES, J. delivered the opinion of the court.

The defendants insured the plaintiff, John O'Niel, against loss or damage by fire, to the amount of two thousand dollars, on his two-story frame building fronting on Ridout and Market streets, in the town of London, Canada West, *occupied by the Hon. George J. Goodhue, as a private dwelling.* The insurance was for one year from the 26th of April, 1847, on which day the policy bears date. The house was destroyed by fire on the 6th of December of the same year. Goodhue, who occupied the house at the date of the policy, removed from and ceased to occupy it about three weeks before the fire.

It does not appear whether the policy in question was made out according to the written application of the plaintiff, or upon a survey made by the agent of the company. If on a written application, a falsity in the description avoids the policy, according to the printed conditions annexed to it; but by the same conditions the company is responsible for the accuracy of a survey made by its own agent. Assuming that there was a written application by the plaintiff, describing the house as occupied by Goodhue, the description in the policy must be regarded as a warranty of the fact that he was the occupant at the date of the policy, and nothing more. The description imports nothing more. The defendant insists that the description warrants not only that he was the occupant at the date of the policy, but that he was to remain the occupant during the continuance of the risk. But the parties have not thought proper to express themselves to that effect. A warranty may be either affirma-

tive, as where the insured undertakes for the truth of some positive allegation ; or promissory, as where the insured undertakes to perform some executory stipulation. (*Marsh. on Ins.* 347.) Here was an affirmative stipulation, that the house was then occupied by Goodhue, but not a promissory agreement that he should continue to occupy it. If it had been the intention of the parties to make it a condition that he should remain the occupant during the term of the insurance, it would have been easy to say so, and there is no good reason in this case for supposing the parties intended what they have not expressed.

The defendants, in support of their construction of the contract, refer us to the cases of marine policies. In those cases, if the vessel insured is described as a Swedish, American or Spanish ship, the description is in most cases held to be a warranty, not only that the vessel is Swedish, American or Spanish, accordingly, but that her documents and papers are in conformity with her nationality, and that she is to remain and be navigated in that character, as long as the risk continues. A marine policy is a commercial contract, and it is construed according to the import of the words as they are understood among merchants. (*Marsh.* 347.) Without the proper documents and papers the ship insured would have no national character, and the possession of such papers are, therefore, a part of what is warranted ; and the continuance of that character is manifestly material to the risk, and indeed the main object of the warranty ; and for that reason it is held to be implied for the purpose of carrying out the clear intention of the parties. If a fact be in plain terms expressly warranted, its materiality to the risk is of no importance ; it becomes a condition precedent, although entirely immaterial. But where a circumstance is sought to be included by implication in the warranty, it never can be supposed that the parties intended to include it unless it be manifestly material to the risk. In the case of a marine policy where the vessel was described as a British brig, and the insurance was *against the perils of the sea only, and the risk to terminate on capture,* it was held that the description in the policy was not a warranty that the brig had a British register

O'Niel *v.* The Buffalo Fire Ins. Co.

and other papers necessary to a national character, because it was in that case immaterial to the risk whether she had or not. (*Mackie* v. *Pleasants,* 2 *Binn.* 363.)

In the case under consideration there is nothing in the contract of insurance, or in the evidence, to show that the hazard on the house was greater when vacant than if it had been occupied by Goodhue. The rate of insurance is not usually made to depend on such a circumstance, and the continuance of Goodhue's occupation as tenant not being embraced within the words of the warranty, and not being manifestly material to the risk, can not be brought within it by inference or implication.

The ground of complaint, so far as relates to the point under consideration, is that the house was insured as a private dwelling, occupied by Goodhue, and not as a vacant building; but that it was suffered by the assured to become vacant without the assent of the insurers. On this point the case of *Catlin* v. *The Springfield Insurance Company,* (1 *Sum.* 435,) was a much stronger case in favor of the insurers, and yet the plaintiff recovered. The insurance was "on a dwelling house in Vermont, owned by Hayden & Hobart of Burlington, and at present occupied by one Joel Rogers as a dwelling house, but to be occupied hereafter as a tavern and privileged as such." The ground of defence was that the building was insured to be occupied; that when burnt it had been a long time vacant, often deserted, derelict, and was destroyed by foul means; and that had the house been occupied as insured, the loss could not have occurred from the cause which destroyed it. It was held that the words in the policy did not constitute a warranty that the house should, during the continuance of the risk, be constantly occupied as a tavern, and that the risk continued although it was vacant. And Mr. Justice Story, in delivering his opinion, said that "the doctrine had never, to his knowledge, been asserted, nor should he deem it maintainable, that a policy against fire on the house of A. in Boston, described as a dwelling house, would be void if the house should cease for a time to have a tenant." This objection, therefore, to the plaintiff's recovery must fail.

The next point of the defence is that at the time the house was burnt painters had been and then were employed in repairing the house by painting the inside; and for that purpose they had brought into the house, and kept there while the work was going on, a quantity of paints, oils and turpentine, part of which was mixed and in use, and part unmixed, and that this was a breach of the conditions of the policy.

The policy contains this clause. "And it is agreed and declared to be the true intent and meaning of the parties hereto, that in case the above mentioned buildings, or either of them, shall at any time after the making, and during the time this policy would otherwise continue in force, *be appropriated, applied or used to or for the purpose of carrying on or exercising therein any trade, business or vocation, denominated hazardous or extra hazardous, or specified in the memorandum of the special rates in the proposals annexed to this policy, or for the purpose of storing therein any of the articles, goods or merchandise in the same conditions denominated hazardous or extra hazardous, or included in the special rates,* then and from thenceforth so long as the same shall be so appropriated, applied or used, these presents shall cease and be of no force or effect."

In the conditions annexed to the policy *oil* and *turpentine* are denominated hazardous goods, and *spirits of turpentine* extra hazardous: and *houses building or repairing* are included within the memorandum of special rates of premium.

It is very clear that the painting of the inside of this house was not an application of the house to the purpose of carrying on the trade of house repairing. The trade of building and repairing houses, requires a shop where the materials are in part prepared beforehand to be put into the buildings to be erected or repaired; and the object of the clause in the policy under which this defence is set up, was to prevent the building insured from being converted into such a shop. It has never been held, nor until now to my knowledge supposed, that the risk of ordinary repairs is not covered by a policy like the present. In *Dobson v. Sotheby,* (1 *Mood. & Malk.* 90,) a tar barrel was taken into a barn which had been insured against fire, for the

O'Niel *v.* The Buffalo Fire Ins. Co.

purpose of repairing the building by tarring it; no fire was ordinarily kept or made there. The terms of the policy required that no fire should be kept in buildings on which the rate of insurance in that case specified was paid. But a fire was lighted inside to boil the tar, and by the negligence of a servant the building took fire and was consumed. The insured recovered. Lord Tenterden said that the condition in the policy must be understood as forbidding only the habitual use of fire, and not its occasional introduction, as in that case, for a temporary purpose connected with the occupation of the premises.

The oil and turpentine brought into the house, in the present case, for the purpose of painting it, were not *stored* therein, within the meaning of the clause above recited. The object of that clause was to prevent the house from being used for the ordinary deposit of hazardous goods, and not for their occasional introduction for a temporary purpose necessary to make the house tenantable as a dwelling. The policy in the case last cited of *Dobson* v. *Sotheby*, contained a clause that if the building insured should be made use of to stow or warehouse any hazardous goods without leave from the insurers, the policy should be void. The bringing in of the tar barrel and keeping it there while the repairs were going on, was held not to be a breach of the condition. So in the policy in the case of *Langdon* v. *The New-York Fire Insurance Company,* (*Hall,* 226, *and* 6 *Wend.* 223,) there was a condition like that in the present case, that if the building insured should be used or applied for the purpose of storing any goods in the proposals denominated hazardous, then so long as the same should be so used or applied, the policy should cease and be of no effect. Oil and spirituous liquors were in the proposals classed among the articles denominated hazardous. When the building was burnt down, a cask of oil and several casks of spirituous liquors were kept there as a part of the stock in trade of the insured for selling by retail. It was held that this was not a storing of the hazardous articles within the meaning of the condition. The word *storing*, in the present case as in that, appears to have been used to denote a keeping for safe custody, to be delivered

in the same condition as when received; and where the safe keeping is the principal object of the deposit; and not a keeping for the purpose of consumption, or sale in the usual course of the business for which the building was occupied. In the present case the hazardous articles were introduced only for a temporary purpose, not prohibited by the policy. The risk attending ordinary repairs are intended to be covered by the insurance.

The remaining question relates to the preliminary proofs. The policy requires the insured to procure and produce a certificate of the loss under the hand of a magistrate, notary public, or clergyman, *most contiguous to the place of fire*, and not concerned in the loss, &c. The plaintiff produced the certificate of Simeon Morrell, Esq. a magistrate residing about one-third of a mile from the place of the fire; but it was proved that there were other magistrates and notaries then residing nearer to that place than himself. This certificate by this magistrate was not a strict compliance with the condition of the policy, and if it had been objected to by the insurers the plaintiff probably could not have recovered without obtaining another certificate from the nearest magistrate or notary. But no such objection was made. The answer given by the defendants to the plaintiff's application to be paid his loss was, "that they were not liable for the loss under the policy." This answer does not point to any defect in the certificate or other preliminary proofs. It is equivalent to the answer of the insurers in the case of *Frances* v. *The Ocean Insurance Company*, (6 *Cowen*, 404,) "that they would not settle the claim in any way." This was held to be a waiver of any imperfection in the preliminary proof. The late chancellor lays down the principle applicable to cases of this kind, in *Etna Fire Insurance Co.* v. *Tyler*, (16 *Wend.* 402.) Good faith on the part of the underwriters requires that if they mean to insist upon a merely formal defect in the preliminary proofs, they should apprize the assured of the nature of the objection, so as to give him an opportunity of supplying the defect, and if they neglect to do so, their silence should be held a waiver of the defect. The magistrate who certified to the loss in the present case, lived within a short distance of the fire, and

was probably as well qualified to make the certificate as if his residence had been nearer. The objection now made to the certificate does not affect the substantial merits of the case. If the defendants had pointed out the defect, the plaintiff might, and probably would, have procured the certificate of the nearest magistrate. Not having done so, they can not now in good faith raise the objection. The judgment of the supreme court must be affirmed with costs.

Judgment affirmed.