# THIRD DEPARTMENT,

AT

# GENERAL TERM,

## January, 1880.

20 93
68 309

## AMBROSE GILLIGAN, RESPONDENT, v. THE COMMER-CIAL FIRE INSURANCE COMPANY, APPELLANT.

*Policy of insurance — condition requiring a certificate of the notary "nearest to the place of fire" — what not a compliance with.*

A policy of insurance, issued by the defendant upon certain buildings belonging to the plaintiff, contained a clause providing that the loss should not be payable, until the assured should have produced proofs of loss, as therein required, and a certificate under "the hand and seal of a magistrate or notary public nearest to the place of fire." The certificate furnished by the plaintiff was signed by a notary who resided in the village in which the buildings were situated, and whose office was distant about twenty-five rods from them; others, justices of the peace, resided and had places of business nearer the burned buildings than did the certifying notary, but only by a few rods; neither of the said justices nor any notary had any office, as such magistrate or notary, nearer than the office of the certifying notary.

*Held,* that the certificate was not signed by the magistrate or notary "nearest to the place of fire," and that the failure of the plaintiff to produce such a certificate prevented any recovery upon the policy.

APPEAL from a judgment in favor of the plaintiff, entered upon the report of a referee.

The action was brought upon a policy of insurance issued by the defendant.

The referee found, among other things, these facts: "That the subject of insurance was described in said contract as follows:

"On his frame building, slate roof, now occupied by P. Lorigan as a store and dwelling, situate on the west side of Liberty street, in the village of Fair Haven, Vermont, as per diagram No. 134,767, on file in this office.

"That the diagram referred to in said contract was a map or plan in which the insured premises were laid down as being on one side of Liberty street, with a dwelling-house on one side, about thirty feet distant, a hotel barn on the other side, partially retired from the street, about fifty feet distant, and hotel on the same side, distance not indicated.

"The diagram correctly located the insured building with reference to said street, and to said buildings appearing upon said diagram.

"There was a barn or stable at that time standing nineteen feet from plaintiff's property, which was not represented on said diagram. The said barn or stable was an exposure to plaintiff's property in question. The distance between the barn and plaintiff's property was actually thirty-six and a-half feet, instead of about fifty feet, as stated in the diagram.

"The contract of insurance contained this provision : ' If any application, survey, plan or description of the property herein insured is referred to in this policy, such application, survey, plan or description shall be considered a part of this contract and a warranty by the assured.'

"That said policy also contains clauses or conditions as follows : ' Assured shall also procure a certificate, under the hand and seal of a magistrate or notary public (nearest the place of fire not concerned in the loss as creditor or otherwise, nor related to the assured), stating that he has examined the circumstances attending the loss, knows the character and circumstances of the assured, and verily believes that the assured has, without fraud, sustained loss on the property insured to the amount which such magistrate or notary shall certify, and that until such a certificate is furnished or produced the loss shall not be payable.'

"That proofs of loss were filed with defendant May 25, 1878, which included a notarial certificate in the form required by the policy.

"No objection was made to said proofs of loss until June 10,

1878, when defendant objected that the certificate of the notary public was not made by the notary nearest the place of fire.

" That the plaintiff did not subsequently furnish to defendant any other certificate than the one aforesaid.

" The notary who made the certificate resided and had his office in the same village, and near the place of the fire, his office being within about twenty-five rods of such fire.

" Other persons were justices of the peace, who resided nearer and had offices of business nearer than said certifying notary, but only by a few rods, and not exceeding thirteen rods.

" That none of said justices nor any notary, not connected with this case as counsel, had any office as such magistrate or notary nearer than the office of said certifying notary."

*G. A. Clement,* for the appellant.

*Tanner & Potter,* for the respondent.

LEARNED, P. J. :

The plaintiff insists, first, that the submission to appraisers was a waiver of a certain alleged defect in the proofs of loss. But the agreement was merely for appraisal of damages, and it expressly states that it is without reference to any other questions or matters of difference. There is no reason to give it a meaning which it expressly excludes.

Again, the plaintiff insists that there was a waiver by the retaining of the certificate some sixteen days. It appears that a certificate, signed by one Gibbs, was sent to the defendants about the ninth of May, to which they objected. Thereupon a certificate of one Rustedt was sent, and was received about May twenty-fifth. On the tenth of June the defendants wrote a letter to the plaintiff objecting that Rustedt was not a magistrate or notary nearest the place of the fire, and also making other objections. This letter was received in due course of mail, but no reply was made, or other certificate promised. I am unable to see that there was any waiver. The defendants expressly objected, and pointed out the objection. Doing this, they afforded the plaintiff an opportunity to correct or amend the alleged defect. He had

lost nothing by their retaining the certificate sixteen days, unless, indeed, they should afterwards have refused to receive a certificate intended to obviate their objections. In *O'Neil* v. *Buffalo Fire* (3 N. Y., 128), the defendants did not point out the objection. In *Turley* v. *North Am. Fire* (25 Wend., 373), the agent of the company refused to return the proofs for amendment.

On the trial it appeared that Rustedt's office was about twenty-five rods from the fire ; his residence further ; that Lloyd, a magistrate, had a place of business about eight rods from the fire ; Allen, about twelve, and Pitkin about fifteen. Plainly, then, Rustedt was not the nearest. Lloyd did no business as a justice ; Allen did no other business than that of justice (except his private affairs); Pitkin was a merchant, and did not do much business as a justice. The referee finds that other persons were nearer than Rustedt by not exceeding thirteen rods, but that no one had an office *as magistrate or notary* nearer than Rustedt.

The policy ends with a clause that it is made and accepted with reference to the foregoing terms and conditions, and one of these terms is that the insurer shall produce the certificate of a magistrate or notary nearest to the place of the fire. The policy is not distinguishable in this respect from that in *Inman* v. *Western Fire* (12 Wend., 452), where such a clause was held to be a condition precedent. And while it seems to me iniquitous for a company to insist on the letter of such a provision, I feel bound by that decision. The remedy is with the Legislature, who should prohibit the insertion of such conditions, and many others in common use, that are of no good except to defeat honest claims.

If such a clause had not been held to be a condition precedent, if it were held to be only an agreement on the part of the insured, then plainly the company would have suffered no loss by the breach of the agreement. For it is evidently of not the least consequence whether the notary lives ten rods or twenty from the fire. But the case above cited has made the performance of what is required in this clause a condition precedent to the recovery, and if it be, then I cannot say that it was performed in this case. The *Turley Case* does not apply, for the company threw obstacles in the way of the proper performance of the condition and the preparation of proper proofs. Nothing of the kind exists

here. The company plainly stated their objection. The plaintiff neglected to amend the alleged defect.

I come to this conclusion with reluctance, but I am compelled to say that I think the judgment must be reversed, a new trial granted, the referee discharged, and that the costs abide the event.

BOCKES, J.:

I concur in the conclusion reached by my brother LEARNED, that there was no waiver of the objection urged against the certificate of the officer, Rustedt; which objection seems fatal to the plaintiff's right of recovery in this action. The production or delivery of a certificate, such as was called for by the policy, within the specified time, was a pre-requisite to the right of action. The parties so expressly agreed; and I am unable to see anything reprehensible in law or morals where a party insists upon all lawful conditions imposed by a contract to which both gave their free assent. Parties make contracts for themselves, and, in the absence of fraud or mistake, it is right that due observance should be required of its lawful provisions. It does not lie with the court to relieve either because of an apparent hardship in the enforcement of terms or conditions which, it must be assumed in a case like the present, were deliberately considered and expressly agreed upon.

I am further of the opinion that here was also a breach of warranty on the part of the plaintiff, as regards the diagram showing the surroundings of the insured property. This was made by the plaintiff or his agent for reference by the company, and was accepted by it as explanatory of the risk to be assumed on the delivery of the policy. The diagram was more than imperfect. It was, in point of fact, actually erroneous in its delineation of surrounding buildings. It was provided in the policy that if a survey, plan or description of the property insured should be referred to in it, such survey, plan or description should be considered a part of the contract and a warranty by the assured; and further, that any false representation by the assured of the condition or situation of the property, or any omission to make known every fact material to the risk, should render the policy void. The diagram was referred to in the body of the policy as

"Diagram No. 134,767, on file in the office." This was the imperfect and erroneous diagram produced. It is only necessary to compare this with the accurate plan or diagram established by the proof to see the very important and material difference between them. As above stated, Diagram No. 134,767, referred to in the policy, was both imperfect and erroneous. It was, in point of fact, a false representation of the property insured, as regards other buildings thereon delineated. There was an omission to designate thereon other buildings situated in its immediate vicinity. This was an "omission" to make known facts material to the risk. For these reasons the policy was inoperative and void by the express stipulation of the contracting parties.

The judgment must be reversed and reference discharged, costs to abide the event.

BOARDMAN, J., concurred in the opinion of BOCKES, J.

Judgment reversed, new trial granted, referee discharged, costs to abide event.