### H. W. BILLINGS v. NATIONAL INSURANCE CO.

1. FIRE INSURANCE—STIPULATION THAT WAIVER OF CONDITION OF POLICY MUST BE IN WRITING STRICTLY CONSTRUED—FILING OF PROOFS OF LOSS.

A policy of fire insurance contained a stipulation that a written and sworn statement of the extent of the loss, etc., should be filed with the company insuring within sixty days after the loss occurred, and also that a change in, or a waiver of, any of the terms of the policy could not be made by any officer, agent or other representative of the company unless such change or waiver be written on or attached to the policy itself. A loss under the policy occurred and the company sent its general agent, who had charge of all the local agents in the state, to examine the conditions of the loss with a view to adjustment. Acting on the words and conduct of this agent the insured delayed filing his proofs of loss as required until more than sixty days had elapsed since the loss. In an action on the policy to recover for the loss in question it was held that the trial judge rightly directed the jury to return a verdict for the defendant at the close of the plaintiff's testimony because it appeared that the proofs of loss had not been filed within the time stipulated and the stipulation of the policy for a written waiver was an essential part of the policy to which the insured assented by accepting the policy, and no agent could waive this condition of the policy as to filing proofs of loss, properly prepared, within the time specified, except in the manner stated in the policy. The doctrine of Travelers' Ins. Co. v. Myers, 62 Ohio St. 529, applies equally as well to cases of fire insurance as to cases of employers' liability insurance.— Parker, J., dissents.

2. THAT WAIVER OF CONDITIONS IN POLICY OF FIRE INSURANCE MUST BE IN WRITING APPLIES TO WHAT OCCURS AFTER THE LOSS.

A provision in a policy of fire insurance that a waiver of any condition or stipulation thereof must be in writing applies as well to what occurs after a loss has been sustained, within the risk assumed by the policy, as to what may occur before the loss.—Parker, J., dissents.

ERROR to Lucas common pleas court.

**Merrick & Jones, Doyle & Lewis** and **J. W. Schaufelberger,** for plaintiff in error.

**J. L. Lincoln** and **O. B. Snider,** for defendant in error.

HULL, J.

This action was brought in the court of common pleas on two insurance policies, issued, one in 1902 and the other in 1903, on a certain store and its contents owned by Mr. Billings, and situated in the village of Whitehouse, this county. The amount of insurance was $400 on one policy and $1,000 on the other. The first occurred on July 1, 1903. The insurance company refused to pay the policies, on various grounds, and among them on the ground that no written, sworn statement of

the loss was filed with the company within sixty days after the fire, as required by the policies. There were other objections made by the insurance company; that an inventory had not been kept, as required by the policies; that the "iron safe" clause, as it is called, had been violated, etc., but it is not necessary to consider any question in this case except the one of a failure to file a written and sworn statement of loss within sixty days. At the conclusion of plaintiff's testimony, the court directed a verdict in favor of the insurance company, judgment was entered upon it and a petition in error was filed in this court to reverse that judgment.

As I have said, it is not necessary to consider the question as to the keeping of an inventory, or any other question but the one, as it seems to be conceded that there is some evidence in the record tending to show that these provisions of the policies were complied with.

It is claimed by the plaintiff in error that the provision in regard to the filing of a printed and sworn statement of loss within sixty days, was waived by the company through its agent and that, therefore, it ought not to prevent a recovery.

It appears from the testimony that immediately after the fire Mr. Billings notified a Mr. Meister, who was the local agent of the company at Swanton in this county; that Meister came to the scene of the fire the next day and saw what the loss was—the loss being well nigh total and exceeding the amount of insurance, and about $500 worth of property was saved. Mr. Meister, at the request of Mr. Billings, telegraphed to the company at their general office in Cincinnati, advising them of the fire on that same day or the next day, and he also, at Mr. Billings' request, immediately notified the company by letter of the loss—the policies requiring an immediate written notice of the loss as well as a sworn statement sixty days later. Mr. Meister, hearing nothing from his communications, in a few days wrote again and received a letter from the company informing him that the matter had been left with a Mr. Meeks, who was the state adjuster of the company, and, according to the testimony, had general charge of the local agents in this state—he being a general agent.

About ten or fifteen days after the fire, the exact time is not stated, Mr. Meeks came to Whitehouse and met Mr. Billings and inquired about the fire. He inquired first as to whether Mr. Billings had an inventory. Mr. Billings told him he had not, as he thought at that time it had been destroyed in the fire. He claims that this inventory was afterwards found. Mr. Billings testifies that Mr. Meeks thereupon threw up his hands: "He threw up his hands, of course," he says, "when I told

Lucas County.

him this,'' and then says that he told him afterwards to get an invoice of his goods from the wholesale houses, as best he could. It is not claimed that there was enough here to constitute a denial of liability on the part of the company, that, under the authorities, would obviate the necessity of furnishing a sworn statement of loss afterwards.

Mr. Billings says that Mr. Meeks told him to get invoices from the wholesale houses and said to him, ''that will take, probably about ten days.'' Mr. Billings says he understood from this that Mr. Meeks would return; and Mrs. Billings testifies that Mr. Meeks said to get these invoices for his inspection, and that he said that would take a week or ten days. They testify that they expected him to return; but he did not return. Meanwhile, Mr. Billings communicated with the local agent, Meister, at Swanton, in regard to the fire and had several talks with him and Meister wrote to the general office of the company, but received no answer to his communications. Billings got his invoices, so far as he could, from the wholesale houses and looked after the goods which were saved. I should say also, that when Meeks, the general agent, was on the ground, he inquired about and examined the goods which had been saved from the fire and told Mr. Billings what to do with them, to preserve them, etc. And the time ran along until the time for the giving of written, sworn proof of loss had expired or was within one day of expiring. Thereupon Mr. Billings had such proofs prepared and transmitted them to the company.

The sworn statement did not reach the office of the company until the sixty-first or sixty-second day—there is some dispute as to which it should be called—and was, therefore, out of rule according to the policy, that requiring the statement to be filed, as I have stated, within sixty days from the fire. I have undertaken to state the facts briefly as shown by the record. The company claims that under the facts, this policy is void; that the provision as to proofs has never been waived in the manner required by the policy and contract of insurance and that, therefore, it is not liable.

The policies contain this provision:

''This entire policy, unless otherwise provided by agreement endorsed thereon or added thereto, shall be void if the insured now has ＊ ＊ ＊ or in case of loss, if sworn statement, in accordance with all the requirements of this policy, as hereinafter provided, shall not be rendered within sixty days after the fire.''

''If fire occurs the insured shall give. immediate notice of any loss thereby in writing to this company, protect the property from further damage, forthwith separate the damaged and undamaged personal prop-

Billings v. Insurance Co.

erty, put it in the best possible order, make a complete inventory of the same, stating the quality and cost of each article and the amount claimed thereon. * * * "And within sixty days after the fire, unless such time is extended in writing by this company, shall render a statement to this company, signed and sworn to by said insured, stating the knowledge and belief of the insured as to the time and origin of the fire."

And then follow other provisions.   And this is contained in the policy, at the end of these provisions:

"This policy is made and accepted subject to the foregoing stipulations and conditions, together with such other provisions, agreements or conditions as may be endorsed hereon or added hereto, and no officer, agent or other representative of this company shall have power to waive any provision or condition of this policy except such as by the terms of this policy may be the subject of agreement indorsed hereon or added hereto, and as to such provisions and conditions no officer, agent or representative shall have such power or be deemed or held to have waived such provisions or conditions unless such waiver, if any, shall be written upon or attached hereto, nor shall any privilege or permission affecting the insurance under this policy exist or be claimed by the insured unless so written or attached."

The policy, it is seen, provides in express terms, that no alteration shall be made in it unless made in writing, and none of its provisions shall be waived or held to have been waived by any agent or officer of the company unless such waiver is in writing indorsed upon the policy or attached thereto.

It is said that this provision requiring the waiver to be in writing, although stipulated for in the policy, may be waived by the general agent of the company, such as Mr. Meeks seems to have been, and that if so, it will be binding upon the company.

In the case of Stacy v. Insurance Co. 25 O. C. C. 67, we so held, under the circumstances of that case. · In that case, however, the agent whom we held had waived this condition, was appointed as a local agent at Bowling Green, Ohio, but, under the circumstances, he being the only agent known to the insured in this country, the company being a foreign one, and the policy not having been delivered at the time of the fire, we held that he should be deemed to be and regarded as a general agent.

The principal office of the company was in England, and we held in that case, following some of the authorities, that a provision requiring a waiver to be written upon the policy, as this policy does, relates to the alterations or waivers that might be made during the life of the policy

and before the loss occurred and that such provisions did not apply after the loss. That case went to the Supreme Court and that court reversed the case, without report, so that we do not know the exact ground upon which it was reversed, but it is no longer authority in this court' or any other court.

The question here is, whether under the law, especially of this state, there was evidence tending to show that this provision as to a sworn statement of loss had been waived by the company, by a general agent such as Mr. Meeks was, in such a manner as to bind the company. There was no express waiver by Mr. Meeks; he did not say to Mr. Billings "you need not prepare your sworn statement" or "you need not file it;" but it is claimed that this conduct was such that Mr. Billings, as a reasonably prudent man, might consider it a waiver and had a right to assume that the company did not intend to insist upon this provision, the general agent having been sent to look after the affair—an adjuster of losses as he was—having been sent there by the company, and the evidence showing that Mr. Meeks was a state adjuster and general agent of the company having charge of all the local agents in the state. Mr. Billings appears to have acted entirely honestly and in good faith. Whether his attention had ever been called especially to this provision of the policies, does not appear; but, having accepted the policies, he was, of course, bound by their conditions by accepting them and thereby becoming a party to the contract.

After examining the authorities which were cited by counsel on both sides in this case, and some others (and a great many were cited in the briefs on both sides), a majority of the court have reached the conclusion that under the decisions of our Supreme Court, the action of the court below was correct—was in accordance with the decisions of the Supreme Court. Whatever our own notions may have been in the case; whatever our own judgment was as to what the law was or should be, we deem it our duty, as of course it is, to follow the decisions of the Supreme Court of our state.

There are many decisions in other states that sustain the contention of the plaintiff in error—the contention that a provision of this kind requiring that a waiver be in writing, does not apply to what occurs after the loss. This is held by many courts and laid down in some textbooks, especially May on Insurance, which was cited in *Stacy* v. *Insurance Co., supra*, but, on the other hand, there are decisions of other states which hold the contrary, and we think our own Supreme Court hold and intend it to be the law of this state that a provision of this kind is to be regarded as an essential part of the contract and that it

continues in force after the loss as well as before. It is a provision which the insurance company has a right to make—that there shall be no alteration or any waiver by any agent of the company unless it is in writing and indorsed upon the policy or attached to it. The parties have a right to make such a contract as that, and the insurance company has the right to insist upon it so as to remove this whole question as far as possible from the uncertain realm of oral testimony, and if a man accepts a policy with this a part of the contract, he is bound by it as well as by all the valid provisions of that contract.

*Travelers' Ins. Co.* v. *Myers,* 62 Ohio St. 529 [57 N. E. Rep. 458; 49 L. R. A. 760], is in point. This was not a fire insurance case, but the "Employer's Liability Co." for insuring employers against loss or damage by reason of an employe being injured. The policy required immediate notice to the company in case of an injury to an employe; which should be construed, the Supreme Court say, to be notice within a reasonable time. The court say it is very important for the company in such cases to have immediate notice of an injury, that they may inquire into it and find out whether it is within the policy, etc. And a fire insurance company may regard it important that they have a sworn statement within sixty days, setting forth the origin of the fire, so that it may be inquired into by the company. It may not be of as great importance as it is in an employer's liability case, but it is clear that it is of very considerable importance. In the third paragraph of the syllabus, the court say:

"When such policy contains a stipulation that 'no agent has authority to waive or alter anything in this policy contained,' and the same is accepted by the insured, it is both notice to and an agreement by, the insured that an agent has no authority to waive or alter anything contained in the policy. *Union Cent. Life Ins. Co.* v. *Hook,* 62 Ohio St. 256, approved and followed.

" 'Immediate written notice' in such stipulation means written notice within a reasonable time under the circumstances of the case; and where the facts are not disputed, what is a reasonable time is a question of law."

Turning back to *Eureka F. & M. Ins. Co.* v. *Baldwin,* 62 Ohio St. 368 [57 N. E. Rep. 57], we find this, in the third paragraph of the syllabus:

"The power of an agent to waive conditions in a policy of fire insurance is not different from the same power in life insurance. As to such power, *Union Cent. Life Ins. Co.* v. *Hook,* 62 Ohio St. 256, is followed and approved."

That is another case in this volume. I have no recollection that

these cases were cited to us in *Stacy* v. *Insurance Co. supra,* at Bowling Green. They are not mentioned in the opinion. On page 541 of the opinion by Judge Davis (*Travelers' Ins. Co.* v. *Myers,* 62 Ohio St. 529 [57 N. E. Rep. 458; 49 L. R. A. 760]), this is said:

"It was further expressly stipulated in the policy that 'no agent has authority to waive or alter anything in this policy contained.' The policy is not unilateral. Since the insured have received, accepted and retained the policy, they are parties to it, although not signing it, and are presumed to know and accept all of its terms and conditions. * * * The insured, having agreed that the stipulation as to notice could not be waived or altered by an agent, cannot excuse themselves for nonperformance of the contract as to notice to the company, by showing that they acted on the suggestion of the soliciting agent that they should not perform the contract as they had made it. In this conclusion we are sustained by numerous decisions in other states. * * *

"We are aware that there are decisions to the effect that conditions in respect to notice and proofs of loss may be waived by an agent, notwithstanding a provision that no agent can change the same. Those decisions are put upon the ground that such limitations on the authority of agents apply only to provisions relating solely to the formation and continuance of the policy, and which are essential to the binding force of the contract while it is running, and do not apply to conditions which are to be performed after the loss has occurred, such as giving notice and proof of loss. While we prefer to put the decision of this case on the grounds, and in line with, the decisions already stated, we think that we have made it sufficiently clear that the stipulation as to notice in this policy, is of the very substance of the contract in insurance of the kind here contracted for, and therefore could not be waived by any agent."

Referring to some of the decisions cited at the bottom of page 541, we can gather from them the doctrine that seems to be approved by the Supreme Court. The first of these cases which we will notice is *Smith* v. *Insurance Co.* 60 Vt. 682 [15 Atl. Rep. 353; 1 L. R. A. 216; 6 Am. St. Rep. 144], where, in the sixth paragraph of the syllabus, this is said:

"But a local agent, who never had been held out by the company as possessing any authority except to receive proposals for insurance, fix rates of premium and issue policies, has no power to waive the condition of a policy requiring a statement of loss; and there was error in the charge when the jury were at liberty to find a waiver from the declarations of either the local or general agent."

Then follows the seventh paragraph:

Billings v. Insurance Co.

"But the general agent cannot waive the statement of loss in a manner other than that provided for in the policy; thus, he cannot give an oral consent to a waiver, when by the terms of the contract the waiver must be indorsed on the policy."

This was a fire insurance case. On page 691 of the opinion, this is said:

"Having held that Turner had authority to waive any condition of the policy, the question remains whether he could do so, save in the manner provided by the contract. One condition of the policy is that no officer, agent or representative of the company should be held to have waived any of the conditions of the policy unless such waiver was indorsed on the policy. This provision was a valid one, binding upon the parties, and effect should be given to it. While the defendant could give its oral consent to a waiver of the statement, no officer, agent or representative could consent unless the consent was indorsed on the policy. This point we think well taken."

That is one of the cases cited with approval by Judge Davis in *Travelers' Ins. Co.* v. *Myers, supra,* and approved by the court, as we understand it. According to that case, although Mr. Meeks was a general agent, yet, as such officer or agent, he could not waive this provision of the policy unless it was done in writing as required by the policy. In the case at bar it is not claimed that the waiver was in writing, and the only claim is that Billings had the right to believe and did believe, from the conduct of Mr. Meeks, that this provision was waived.

Another case cited in this opinion is *Kirkman* v. *Insurance Co.* 90 Iowa 457 [57 N. W. Rep. 952; 48 Am. St. Rep. 454]. There are other cases from Iowa, and there is one more recent than this, that seems to hold, perhaps, a different rule from this case, but we are only citing these cases that were approved by the Supreme Court. It is held in this case that:

"Under a policy making it an express condition that none of its provisions could be waived, except in writing by the secretary, an adjuster cannot orally waive proof of loss required by the policy."

There was some correspondence in this case with the president of the company, and the insured sent for a copy of the policy, which was sent to him. The court say, on page 458:

"The claim of waiver of proofs of loss is based upon the acts of the officers and agents of the company by which the plaintiff was induced to believe that no proofs of loss were required. There is nothing in the evidence by which any waiver could be inferred, founded upon the acts or declarations of the agent, Mullen."

Lucas County.

Another case cited in this opinion is, *Gould* v. *Insurance Co.* 90 Mich. 302 [51 N. W. Rep. 455]. There the court say, in the syllabus:

"A failure to furnish proofs of loss within the time required by an insurance policy bars an action thereon, unless waived, where the policy further provides that such failure shall work a forfeiture of such right of action."

"A verbal waiver of such condition by an agent of the company will not prevent such forfeiture, where the policy plainly provides upon its face that no agent shall have power to waive any of its conditions except by writing endorsed on or attached to the policy."

*Walsh* v. *Insurance Co.* 73 N. Y. 5, is also cited. The court there say, on page 10 of the opinion:

"The doctrine is established to prevent fraud, and proceeds also upon the ground that when one of two innocent persons must suffer from the act of a third person, he shall sustain the loss who has enabled the third person to do the injury. If, however, a person dealing with an agent knows that he is acting under a circumscribed and limited authority, and that his act is in excess of or an abuse of the authority actually conferred, then manifestly the principal is not bound, and it is immaterial whether the agent is a general or a special one."

Referring to the power of the agent to waive unless in writing.

There are other cases cited, but I will not refer to them; they will be found in the opinion of Judge Davis. In that case the court says there are cases which hold the other way; but that they prefer to follow these, and they are thus made practically a part of this opinion and are approved by the Supreme Court.

It seems like a hardship upon Mr. Billings to lose his insurance upon this account; but if the contract which was made was valid, if the failure on his part to comply with it works a forfeiture under the law of this state, this court is unable to help him. There is force in the contention that where a company has sent its general agent to adjust a loss and look into it, that it should be held to be a waiver of a written and sworn statement of loss; that would seem to be an equitable doctrine; but the cases decided by and approved of by the Supreme Court seem to hold that such a provision is an essential part of the contract; that it cannot be waived in any other way than that approved by the policy, so that there may be no question, no dispute, nothing to be proved by oral testimony, no alleged verbal statements to be met upon this question of waiver, which it is provided shall be shown only in writing. It is said that the time had only gone a day or two beyond the time provided for in the policy. That is true, but, if the condition is to apply at all,

Billings v. Insurance Co.

it must apply in the words of the policy—sixty days—and if sixty-one days might be approved, then seventy days might be and it would be difficult to draw the line.

There is no statutory provision on this question, no provision that if the company has not been prejudiced by the failure of the insured to transmit a sworn statement of loss within the time that this shall not be a bar or forfeit the policy. A very full opinion was delivered by the trial judge (Judge Morris), in deciding this question, in which he has gathered many authorities—many more than we have cited—which opinion will be found in *Billings* v. *Insurance Co.* 14 Dec. 387. We are unable to see how, under these decisions to which I have referred, he could have decided the question otherwise. As was said by Judge Morris, we sympathize with Mr. Billings in his loss, but it is our duty to follow the law as we understand it to be.

The judgment of the court of common pleas is affirmed.

PARKER, J., dissenting.

I find myself unable to bring my mind into agreement with the decision of a majority of this court in this case. I do not believe that the rule which has been laid down here by them will be conducive to the attainment of the ends of justice. Neither do I think that it is in harmony with the expressions of our Supreme Court upon the subject, unless, perhaps with some of the language of Judge Davis in the opinion in *Travelers' Ins. Co.* v. *Myers*, 62 Ohio St. 529 [57 N. E. Rep. 458; 49 L. R. A. 760], referred to by Judge Hull; and I am of the opinion that more weight is given by my colleagues to certain expressions of Judge Davis and to certain facts in that case, and less weight to others, than should be given to them.

If it were possible for this general agent, by his conduct, to waive the formal proofs of loss, then we are agreed that there was testimony tending to show such a waiver. Unless the whole matter is concluded by this provision of the policy, as to the proofs of loss, so that no consideration may be given to such evidence the case should have gone to the jury.

In looking into the facts of the case we find that the evidence of waiver was not very strong; but there was some oral evidence—enough my associates have, very properly, met the question squarely; they have not undertaken to avoid it by laying any stress upon the fact that a strong case of waiver was not made out; for they ap-

36 O. C. C. Vol. 27

preciate, as we all must, that if this rule is to be laid down and followed, it must be applied where there is strong oral evidence of waiver as well as where such evidence of waiver is slight.

I cannot see how the courts can avoid following it if it is established as a rule of law, even where the conduct of the agent, which ordinarily would amount to an estoppel *in pais*, is so pronounced as that to not apply the doctrine of estoppel would operate as a gross fraud upon the insured. For instance, a general agent may come upon the ground—even the president of the company, according to the claims of counsel for the insurance company here—see the ashes of the fire and be satisfied that a fire has occurred; investigate the evidences of the loss and be satisfied that the loss claimed has occurred, and that the loss is great enough so that the company is liable, if at all, for the whole amount of insurance; he may be satisfied that the loss is entirely honest so far as the insured is concerned; that there is no valid reason on moral or legal grounds for resisting payment of the loss under the policy; he may say so to the insured; he may say to him, "It is not worth while to make out proofs of loss in this case, it is perfectly clear that you are entitled to your money;" he might lull the insured into security by such conduct and declarations and keep it up until the very last hour of the sixty days, and then turn his back upon him and snap his fingers at him and say, "we will not pay you because you have not made formal proofs of loss." Now that, as I view it, might result from establishing this rule; it could be used in that unfair way by an insurance company; and I think it is not out of place to say that the experience of business men is such as to justify the suspicion, at least, that there are some insurance companies doing business in the country that would be glad to take unfair advantage of such a rule; and therefore I say that I do not believe that the adoption of such a rule would be conducive to the attainment of the ends of justice.

I agree with my associates that under the authorities, even in Ohio, a denial of liability on other grounds than that of lack of proofs of loss, by the general agent of an insurance company, amounts to a waiver of proofs of loss. I understand that that is distinctly held in the case of *Enterprise Ins. Co.* v. *Parisot*, 35 Ohio St. 35 [35 Am. Rep. 589], and though we have found by experience that it is not safe to place much reliance upon unreported cases, or upon the deductions of counsel, or of publishers of unofficial reports thereof, as to what has been decided by the courts, yet it seems from the report of the case, *Ohio Farmers' Ins. Co.* v. *Danison*, 1 O. S. C. D. 653 (38 Bull. 163), a case not reported by authority of the Supreme Court, but reported by

Billings v. Insurance Co.

the Bulletin upon its own responsibility, that the same thing was held there, and held, as I understand it, because of the denial of liability on some other ground, before proofs of loss were due; the company through its general agent having said to the insured, in effect, "it would be idle and useless for you to make up a proof of loss in this case, we will not pay the policy in any event." But, if that is still the law, what becomes of the provision in the policy that the proofs of loss cannot be waived except by agreement indorsed upon the policy? Such denial of liability of itself amounts to a waiver by conduct of proofs of loss. If there is to be any exception to or qualification of this provision of the policy, why not an exception in a case such as I have instanced, where the insured is given to understand up to the very last moment that the right to recover will not be questioned and then is disappointed when it is too late to correct the matter?

The case of *Travelers' Ins. Co.* v. *Myers, supra,* is, it seems to me, very different from this, and does not amount to a precedent to be followed here; and for my part, in the establishment of such a rule as that applied by my associates, I am unwilling to go one step in advance of what the Supreme Court has distinctly held.

The case last referred to was one of insurance by an employer against liability and loss on account of injuries which might be sustained by employes. It appears that an accident happened to an employe and that no notice of the fact was conveyed to the company for some nine months after the accident occurred, whereas the policy required that "Immediate written notice shall be given this company of any accident and of all alleged injuries, together with copies of all statements made by employes, and all other information in possession or knowledge of the insured in any way relating to such accident or liability therefor." And Judge Davis points ont why it is material in a case of that kind that the insurance company should have this information at the earliest possible moment, so that it may investigate the matter before it has faded from the minds of the witnesses, before the aspect of the whole matter is changed, while the insured is still suffering from his injury or accident, so that it may ascertain the extent of his injury, and especially so that it may ascertain whether or not there is a liability. Myers & Co. undertook to excuse themselves from furnishing this information on the ground that the local soliciting agent had advised them against doing it; had advised them to keep silent; had said to them that if they stirred the matter up the injured man might conceive that he had a cause of action and bring a suit against them, and that he might not do so if they kept still and allowed the matter to blow over.

Lucas County.

In the course of his opinion Judge Davis emphasizes the fact that the agent was merely the soliciting agent, and the fact that what he is saying is applicable to that particular form of insurance. It seems to me that he carefully seeks to avoid having such a conclusion drawn from his utterances as is drawn therefrom by my associates. He endeavors to confine what he says to the particular kind of insurance under consideration there. What he, or the court, may have said if this had been done by a general agent, we can only surmise. What the court may have said if some general officer of the company had been upon the ground, had seen the accident, investigated all the facts, become satisfied that there was a liability and had said so—had said: "You need not furnish the information, we are already fully informed," we can only surmise.

It can hardly be inferred that under circumstances like those the court would have said that the company might still insist upon the formal evidence required under the written terms of the policy. But, that was not a fire insurance case to begin with. Much of what the learned judge says with reference to the materiality of these proofs, to put the insurance company in a fair position to protect itself, it seems to me has no application to fire insurance generally, and has no application to a case where a fire insurance company has become fully satisfied as to the facts and has so declared, without the formal proofs being presented.

It appears to me that the conclusions of my associates are in opposition to a rule that has been well established by the courts and recognized by the leading text writers: i. e., that a provision like the one here relied upon shall not be applied to stipulations touching acts to be performed after loss. This rule, and the doctrine of estoppel in pais as applied to this subject, are found in the books running at times in parallel lines and at times converging, and I shall read some authorities applicable to both phases of the subject.

I will read first a few paragraphs from Bishop on Contracts. Taking up in this small book the whole subject of contracts, of course Mr. Bishop was obliged to treat these principles with great brevity, but, under the head of Waiver, at page 308, Secs. 790 and 791, he has this to say, in part:

"Waiver, equally with its counterpart, election, pervades nearly or absolutely every department of the law and judicial practice, civil and criminal. * * *

"The doctrine rests on one, or another, or on all in combination, of

Billings v. Insurance Co.

the following three principles, as the special facts and nature of the particular case indicates; namely the principle of contract by mutual consent of the wills, the principle of contract created by law, and the principle of estoppel.''

Then going to Sec. 796:

''The principle on which, in various circumstances, a performance in time or manner differing from the stipulations which are waived, is accorded the same effect as a literal performance, is evidently that of estoppel. A party who, standing by, has concurred in and accepted what the other did in fulfillment, is not in a position to deny that the contract has been fulfilled. To illustrate,—

''A policy of insurance specifies the time and manner of notifying the insurer of a loss, and proving it. But if, after the loss, the proper officer of the insurance company, instead of standing upon his right to have such notification and proof, goes upon the ground and agrees with the insured as to the valuation, the transaction constitutes a waiver, by the company, of the steps set down in the policy. And so does anything else of a similar sort. If, where the insurer has thus waived the steps, leaving the insured to believe them not required, the former could insist on being released from payment because they were not taken, he would have misled the latter to his great detriment,—exactly what the doctrine of equitable estoppel was introduced into the law to prevent.''

Now independently of any other consideration, and looking upon this simply as a question of estoppel, a case where the law says, ''You shall be held to have waived, and shall not be heard to deny that you have waived, because of your conduct in the premises,'' it seems to me that it would be against public policy, and that therefore it would not be competent or permissible, for an insurance company to provide in its policies that it will not be bound by the equitable rules of estoppel; to say ''We will not be affected by anything our general officers or general agents may do that might operate upon us as an estoppel *in pais*.'' In my judgment stronger reasons may be adduced for holding such a provision void because opposed to public policy than those supporting the doctrine that a provision in a contract of a common carrier that it shall not be liable for lossess occurring through its own negligence, are invalid. While the company may stipulate that it will not be bound by any agreement unless it is reduced to writing, such stipulation should be qualified to the extent required to give full effect to the equitable doctrine of estoppel *in pais*. Without opportunity to search the books extensively for authority in support of this doctrine, enough has been found to show that it is not without support.

Lucas County.

In 1 Joyce, Insurance Sec. 579, we read:

"It is held that a condition in the policy which conflicts directly with a settled rule of law will not be allowed to bind the assured, although he accept the policy, unless it appears that his attention was specially called thereto."

The reference to authority for this statement appears to be *Norman Pitney* v. *Insurance Co.* 61 Barb. (N. Y.) 335, and from the opinion in that case we extract the following:

"The defendant further resisted the plaintiff's right to recover, upon the ground that the preliminary proofs of loss were not as complete as the policy required. In the conditions of insurance it was provided that no act or omission of the company, or any of its officers or agents, should be deemed a waiver of a full and strict compliance with the requirements made concerning such proofs, except it be by a waiver in express terms, in writing, signed by the president or secretary of the company. This provision is directly in conflict with the settled rules of law established for the government of this class of cases. And while there is no doubt but that a party may renounce the benefit of settled legal rules existing in his favor, yet before he should be held to have done so, something clearly evincing that to have been his purpose should be required to be affirmatively or positively shown. The acceptance of a policy of insurance containing a clause declaring that no act or omission of the insurers, their officers or agents, shall be deemed a waiver of compliance with requirements as to preliminary proofs of loss, unless it be by a waiver, in express terms, in writing, signed, etc., to which there is no evidence that the attention of the insured was ever in any manner directed, should never be permitted to produce such a result. The policy of the law stands directly in the way of allowing persons to be entrapped into the implied surrender of their well established legal rights by the success of any such ingenious device. If it should be allowed to prevail, the insurer would be secured a privilege which could be so used as to defeat all its undertakings, and legally protect a career of fraud never yet sanctioned by either law or good morals.

"But in this case the insured, in the preliminary proofs furnished, expressly offered to supply 'any other information that might be required,' on call. Notwithstanding the provision that the waiver of defects in the proofs must be in writing, it was still in the power of the company to waive that requirement. And by not responding to this offer while the defects could have been corrected and supplied, it should be held to have made that waiver. For, good faith, as well as every consideration of fair dealing, required it to specify the defects in the proofs

Billings v. Insurance Co.

when they were accompanied with this offer, if the company did not intend to waive any further act in that respect, on the part of the insured. (*O'Niel* v. *Buffalo Fire Ins. Co.* 3 N. Y. 122. *Post* v. *Aetna Ins. Co.* 43 Barb. 352.) The objections to these proofs came too late, and were properly overruled at the trial.''

I read from May, Insurance (3 ed.) Sec. 473d, published in 1891:

''A clause to the effect that no act of the company, except an express written declaration, shall waive the requirements in regard to proofs, will not prevent the company from estopping itself, by act *in pais*. So far as the clause is intended to have such effect it is void, for a man cannot contract not to make an agreement that the law allows him to make with the covenantee. A provision in the policy that no condition shall be waived or annulled except by indorsement upon it, will not prevent the waiver of proofs of loss if the insurer without objecting to their absence joins in proceedings for adjustment. In spite of such a condition the agent may have authority to orally waive proof of loss, and the question should go to the jury. Such a provision is held not to refer to stipulations to be performed after loss, such as giving notice and proof.''

I also read a part of Sec. 311—under the head ''Waiver; stipulation against, limitation of agent's authority.''

''A clause in a policy of insurance that 'nothing but a distinct specific agreement, clearly expressed and indorsed on the policy, shall operate as a waiver of any printed or written condition, warranty, or restriction thereon,' refers to those conditions and provisions of the policy which enter into and form a part of the contract of insurance, and are essential to make it a binding contract between the parties, and which are properly designated as *conditions,* and not to those stipulations which are to be performed after a loss has occurred, such as giving notice and furnishing preliminary proof of the loss.''

Now Judge Davis says, in the course of his opinion before mentioned, that there is a line of decisions to this effect. A great many decisions to this effect are cited under the sections that I have read from May on Insurance. Others are cited by counsel for plaintiff in error. I cannot attempt to refer to or read from them without extending this opinion to too great length, but it seems to me that they lay down and establish a general rule, and that the few decisions cited from Vermont, Michigan and New York, that seem to adopt a different rule, are singular and out of line with the current of authorities; and while Judge Davis has expressed some satisfaction with these decisions, I do not understand that he attempted to adopt them on behalf of our Su-

preme Court to the full extent that they go. I understand that a fair way of considering what he said and the use he has made of them is to say that, insofar as they are necessary to sustain his opinion in this case, he adopts them; and so far as they are necessary to sustain the opinion of the court in that case, we need not combat them, for that was a case of a mere soliciting agent, and of a different form of insurance and a different state of facts.

In the case of *Ohio Farmers' Ins. Co.* v. *Wilson*, 70 Ohio St. 354, 362 [71 N. E. Rep. 715], Judge Davis lays down a rule for interpreting decisions that may well be applied to his opinion in *Travelers' Ins. Co.* v. *Myers, supra,* when he says, in substance, that it is the syllabus alone for which the concurring judges are responsible, and that the syllabus must be interpreted in the light of the particular facts and circumstances of the case.

There is one authority containing language that seems to me to be very appropriate here. It is the case of *McNally* v. *Insurance Co.* 137 N. Y. 389 [33 N. E. Rep. 475]. I will read from page 398:

"In determining the liability of the defendant it is entitled to the benefit of its contract fairly construed and can stand upon all of its stipulations. But when its liability has become fixed by the capital fact of a loss, within the range of the responsibility assumed in the contract, courts are reluctant to deprive the insured of the benefit of that liability by any narrow or technical construction of the conditions and stipulations which prescribe the formal requisites by means of which this accrued right is to be made available for his indemnification. If in this case, a right of action accrued to the plaintiff, by reason of the destruction of the property by fire on June 7, 1885, a liberal and reasonable construction of the stipulations of the contract which prescribe the formal acts on the part of the insured necessary to the recovery of the loss, is sanctioned and required by the rules of law."

And there are a large number of cases here cited. Obviously there is a great difference between the provisions in the contract which have reference to risks assumed by the insurer, which are put in for the protection of the insurer so that the risk may not be increased without its knowledge, so that it may know and be advised all along as to the extent of its undertaking, so that there may not be binding oral stipulations upon that subject between the agents and the insured, and such provisions as apply to measures to be taken after the liability is fixed, after the fire has occurred. To the performance of these conditions subsequent, these things that are to be done in the way of furnishing the evidence of loss, it seems to me that the authorities require that very

Billings v. Insurance Co.

different rules shall be applied from those applicable to conditions of the other class, and that the courts have almost universally applied to these conditions subsequent rules that are calculated to preserve to the insured the right that has ripened into a just claim to pecuniary indemnification and that they may continue to do so without doing any injustice to the insurer whose liability has become fixed by the occurrence of the loss.