HENISER v FRANKENMUTH MUTUAL INSURANCE COMPANY

Docket No. 97462. Argued January 11, 1995 (Calendar No. 4). Decided July 6, 1995.

Richard J. Heniser brought an action in the Kent Circuit Court against Frankenmuth Mutual Insurance Company, seeking the proceeds under a homeowner's policy for property destroyed by fire that he had sold on a land contract. Following mediation, the court, Robert A. Benson, J., entered judgment for the defendant, finding that because the plaintiff did not reside at the property at the time of the fire, the policy did not provide coverage. The Court of Appeals, MACKENZIE, P.J., and CONNOR, J. (GRIFFIN, J., dissenting), affirmed (Docket No. 142957). The plaintiff appeals.

In an opinion by Justice BOYLE, joined by Chief Justice BRICKLEY, and Justices CAVANAGH, RILEY, and WEAVER, the Supreme Court *held*:

The policy is unambiguous; the destruction of the building does not fall within the scope of the policy.

1. Coverage under the policy at issue is predicated on two separate requirements: residence of the insured at the insured premises, and listing of the premises in the declarations section. This policy admits of one interpretation and is not ambiguous or fatally unclear. The plaintiff did not reside at the premises at the time of the fire. Thus, the property was no longer a "residence premises," and the policy does not provide coverage for the destruction of the building.

2. The policy is not internally inconsistent. Although its conditions section requires notification of the insurer of any changes in title or occupancy of the property, it does not conflict with the definitions section mandating that the insured reside at that property. The definition of "reside" is not ambiguous, and the exclusion was not deceptively placed in the definitions section.

Affirmed.

Justice LEVIN, joined by Justice MALLETT, dissenting, stated that the policy provides coverage although the dwelling was sold before the fire occurred.

Because the words of the policy "where you reside" are in the

present tense, and an ordinary insured who receives a renewal certificate, resides in the insured dwelling, and reads the policy when issued would understandably conclude coverage for fire loss to extend throughout the one-year term of the policy, and because the policy does not oblige the insured to notify the insurer of a change of occupancy until after a fire loss, it is at least ambiguous whether "where you reside" speaks of an indefinite future date after issuance requiring the insured to actually reside in the dwelling when a fire loss may occur. The ambiguity should be resolved in favor of providing coverage although the insured had sold the dwelling on land contract before the fire occurred.

Reading a homeowner's policy as eliminating coverage when a dwelling is sold, although the dwelling continues to be occupied by a responsible person, adds a condition of coverage respecting fire loss neither set forth in the standard fire insurance policy nor permitted by the essential insurance act, and is not valid or enforceable. The only provision of the standard fire policy that bears on the extent of coverage following a sale of the property is the insurable interest provision. The homeowner's policy, consistent with the standard fire policy, reduces coverage only to the extent the homeowner ceases as a result of a sale to have an insurable interest. In this case, the plaintiff clearly had a substantial insurable interest represented by title to the dwelling and the land contract seller's interest.

The essential insurance act permits an insurer to terminate insurance for reasons that conform to the underwriting rules of the insurer, effective not earlier than thirty days after notice to the insured of a specific reason for termination. However, the defendant did not refuse to insure or refuse to continue to insure the plaintiff's dwelling. Nor did it avail itself of the provision in the essential insurance act permitting termination of coverage by notifying the plaintiff that his homeowner's insurance was terminated because he had vacated the dwelling after selling it on land contract. An insurer may not adopt an underwriting rule permitting it to refuse to insure or renew or terminate coverage simply because the owner-occupant has vacated the premises; the underwriting rule only may provide for elimination of coverage if there has also been unoccupancy of the dwelling for more than sixty days.

The majority's construction of "where you reside" leads to harsh results not mandated by any rule of construction or underwriting risk: A homeowner's policy ceases to apply if an uninformed homeowner vacates the dwelling without causing policies of insurance to be rewritten. This is a windfall to

insurers, to be availed of adventitiously. In this case, it was a fallback from the defendant's unsuccessful effort to withhold payment on factual grounds.

201 Mich App 70; 506 NW2d 247 (1993) affirmed.

*Cholette, Perkins & Buchanan* (by *Bruce M. Bieneman* and *Robert A. Kamp*) for the plaintiff.

*Morrison, Mahoney & Miller* (by *Phillip K. Yeager* and *Meigs M. Day*) for the defendant.

BOYLE, J. The question presented is whether the homeowner's insurance policy in this case provides coverage for the destruction of the insured's building. We hold that the policy is unambiguous, that the destruction of the building does not fall within the scope of the policy, and thus affirm the decision of the Court of Appeals.

I

The facts are not in dispute. Plaintiff Heniser and his wife purchased a vacation home in Honor, Michigan. The couple lived in the house intermittently throughout the years until their divorce.

Heniser retained possession of the property after the divorce, but in November, 1988, sold the property on a land contract. At the time of the sale, the property was insured by defendant-appellee Frankenmuth Mutual Insurance Company under a homeowner's policy that expired September, 1989. Heniser did not inform Frankenmuth of the sale.

In January, 1989, the property was destroyed by fire. Heniser filed an insurance claim with Frankenmuth under his homeowner's policy seeking $20,000 for the building, $24,500 for personal property and $7,200 for related cleanup expenses. Frankenmuth denied coverage, terminated the policy, and returned the unearned premium to Hen-

iser. Frankenmuth contended that Heniser's claim was barred because of fraud and false swearing with regard to the cash value of the personal property damaged by fire, and that the damage to the building was not covered by the policy because Heniser did not and could not reside at the property, as required by the contract,[1] at the time of the fire.

---

[1] The homeowner's insurance policy issued by defendant in this case is a thirty-five-page form policy. The language pertinent to this case is found in the definitions section on page one of the policy:

In this policy, "you" and "your" refer to the "named insured" shown in the Declarations and the spouse if a resident of the same household. "We," "us" and "our" refer to the Company providing this insurance. In addition, certain words and phrases are defined as follows:

* * *

3. "Insured" means you and residents of your household who are:

a. your relatives; or

b. other persons under the age of 21 and in the care of any person named above.

* * *

4. "insured location" means:

a. the residence premises;

b. the part of other premises, other structures and grounds used by you as a residence and:

(1) which is shown in the Declarations; or

(2) which is acquired by you during the policy period for your use as a residence;

c. any premises used by you in connection with a premises in 4.a or 4.b above;

d. any part of a premises:

(1) not owned by an insured; and

(2) where an insured is temporarily residing;

e. vacant land, other than farm land, owned by or rented to an insured;

f. land owned by or rented to an insured on which a one or two family dwelling is being built as a residence for an insured;

g. individual or family cemetery plots or burial vaults of an insured;

h. any part of a premises occasionally rented to an insured for other than business use.

* * *

8. "residence premises" means:

a. the one family dwelling, other structures and grounds; or

Heniser then filed suit against Frankenmuth, alleging that it had breached its insurance contract. In response, Frankenmuth asserted the aforementioned defenses.

The parties filed cross-motions for summary disposition.[2] Both motions were denied, and the Court of Appeals denied interlocutory relief.

Following mediation, the case was tried without a jury before Judge Robert A. Benson. At the close of testimony, Judge Benson held that because Heniser did not reside at the property at the time of the fire, the policy did not provide coverage for the loss of the building. Judge Benson also found that Frankenmuth had not carried its burden of proving fraud by clear and convincing evidence. On appeal, the parties stipulated to the facts and agreed that the only issue is whether the definition of "residence premise" provides coverage for destruction of the building.[3]

The Court of Appeals affirmed the holding[4] that the policy did not cover the destruction of the building. 201 Mich App 70; 506 NW2d 247 (1993).

---

b. that part of any other building; where you reside and which is shown as the "residence premises" in the Declarations.

[2] Frankenmuth's motion relied on MCR 2.116(C)(8) (failure to state a claim on which relief can be granted) and MCR 2.116(C)(10) (no genuine issue of material fact). Heniser's motion was based solely on MCR 2.116(C)(10).

[3] At trial, Frankenmuth contested recovery for the personal property as well because it alleged that the entire policy was void on the basis of Heniser's fraudulent claim regarding the value of the personal property. Judge Benson found no fraud on the part of Heniser, however, and presumably Heniser has recovered for the value of his personal property. The policy language defining the scope of coverage for personal property does not employ the term "residence premises," but rather covers "personal property owned or used by an insured while it is anywhere in the world." Accordingly, the only loss in dispute is that of the building and not the contents.

[4] GRIFFIN, J., dissenting.

We granted leave to appeal on July 22, 1994. 445 Mich 943.

II

A

Plaintiff contends that the insurance policy is ambiguous regarding whether the policy covered his loss, even though he did not, and could not,[5] reside at the insured premises at the time of the fire. Plaintiff advances three arguments in support of claimed ambiguity: (1) the definitions section of the policy and the conditions section of the policy are internally inconsistent; (2) it is unclear whether he had to reside at the insured premises only at the time the policy was entered into or whether he had to reside at the insured location throughout the term of the policy; (3) an exclusion from coverage was deceptively placed in the definitional section.

Ambiguous provisions in an insurance contract are construed against the insurer and in favor of coverage. *Group Ins Co of Michigan v Czopek,* 440 Mich 590; 489 NW2d 444 (1992); *Powers v DAIIE,* 427 Mich 602, 624; 398 NW2d 411 (1986). Where the policy is clear, however, "courts are bound by the specific language set forth in the agreement." *Cottrill v Michigan Hosp Service,* 359 Mich 472, 476; 102 NW2d 179 (1960); *Raska v Farm Bureau*

---

[5] In this case, when Heniser signed the land contract, he affirmatively manifested his intent to no longer reside at the residence premises in the future, and relinquished his right to do so. We might be faced with a different situation if the insured has not affirmatively engaged in behavior that indicates an intent to no longer reside at the insured premises, such as if the insured were to die, or if the insured continues to retain the right to reside at the residence premises, such as the period between when an insured places his home for sale but has not yet completed the transaction. These are not the facts of this case, however, and we express no opinion on how we would resolve those scenarios.

*Mut Ins Co,* 412 Mich 355; 314 NW2d 440 (1982). Terms in an insurance policy must be given their plain meaning and the court cannot "create an ambiguity where none exists." *UpJohn Co v New Hampshire Ins Co,* 438 Mich 197, 206; 476 NW2d 392 (1991). An insurer is free to define or limit the scope of coverage as long as the policy language fairly leads to only one reasonable interpretation and is not in contravention of public policy. *Raska, supra* at 361-362. If these prerequisites are fulfilled, the policy will be enforced as written.

Heniser has not, and cannot, demonstrate that the policy covers the destruction of the building.[6] The policy in this case, read as a whole, is unambiguous and does not cover the loss because the property was not a "residence premises" at the time of the loss.[7]

Our conclusion that the policy is unambiguous is further strengthened by the language Heniser included in the land contract when he sold the property. The land contract states:

> Said Purchaser shall promptly pay, when due, all taxes and assessments of every nature, which

---

[6] It is without dispute that the "insured bears the burden of proving coverage, while the insurer must prove that an exclusion to coverage is applicable." *Arco Industries Corp v American Motorists Ins Co,* 448 Mich 395, 424-425; 531 NW2d 168 (1995) (BOYLE, J., concurring).

[7] It is important to note at the outset that while other courts have concluded that similar language is merely descriptive of the property covered by the policy, no court in the country has found this or similar language to be ambiguous. See *Hill v Nationwide Mut Fire Ins Co,* 214 Ga App 715; 448 SE2d 747 (1994); *Georgia Farm Bureau Mut Ins Co v Kephart,* 211 Ga App 423; 439 SE2d 682 (1993); *Ins Co of North America v Howard,* 679 F2d 147, 148 (CA 9, 1982) ("We also find the provision unambiguous"); *Shepard v Keystone Ins Co,* 743 F Supp 429, 430 (D Md, 1990) ("There is no ambiguity as to the meaning of the terms 'residence' or 'reside' in the insurance contract between Shepard and Keystone"); *Nancarrow v Aetna Casualty & Surety,* 932 F2d 742, 744 (CA 8, 1991); *Epps v Nicholson,* 187 Ga App 246, 247; 370 SE2d 13 (1988) ("we do not find the provisions here to be conflicting, or the policy language ambiguous").

> shall become a lien on said premises after the date
> hereof, and shall, during the continuance of this
> contract, keep insured the buildings now on said
> premises or which shall hereafter be placed
> thereon in the name of said Seller against loss by
> fire and windstorm, in such company or companies
> and for such amount as the Seller shall approve,
> and forthwith deposit all policies of insurance with
> the Seller, with loss, if any, payable to the Seller,
> as his interest may appear under this contract.

Heniser included this language to protect himself
in case the property was destroyed before the
purchasers completed payment. This language in-
dicates Heniser understood that his existing insur-
ance policy would not cover the property after he
sold it, and strengthens our conclusion that the
policy in question does not cover the destruction of
the building.

### B

The policy is not internally inconsistent. Al-
though the conditions section of the policy requires
the insured to notify the insurer of any "changes
in title or occupancy of the property during the
term of the policy" before recovering for any loss,
this provision does not conflict with the definitions
section mandate that the insured reside at the
property. The requirement in the conditions sec-
tion simply allows the insurance company to guar-
antee that the insured had an insurable interest in
the property at the time of the loss or to coordi-
nate coverage with other potential insurers.

### C

While the definition of "reside" may be ambigu-
ous in other contexts, there is no ambiguity in this
case. The Court of Appeals, in interpreting the
term "resides" in the Michigan Freedom of Infor-

mation Act[8] and in the Child Custody Act[9] has found the term to have two different meanings: a legal or technical meaning and a general or popular meaning. *Curry v Jackson Circuit Court,* 151 Mich App 754; 391 NW2d 476 (1986); *Kubiak v Steen,* 51 Mich App 408; 215 NW2d 195 (1974). In some contexts, the legal term means something more than actual physical presence; it includes the intent to live at that location at sometime in the future, a meaning similar to the legal concept of domicile. *Id.* at 413. In other contexts, the term requires actual physical presence. *Id.*

The policy of interpreting ambiguities in a contract against insurers is rooted in the fact that insurers have superior understanding of the terms they employ, which should not bind relatively unsophisticated insureds. This goal is not furthered by allowing insureds to employ a sophisticated version of a term to create a claim of ambiguity.

Finally, any ambiguity created by the fact that the law ascribes multiple meanings to the term "reside" is irrelevant because Mr. Heniser fails under either standard.[10] Mr. Heniser admits that he did not actually live at the insured premises at the time of the fire and that he did not intend to live there in the future. Accordingly, Mr. Heniser did not "reside" at the insured premises under either definition.

D

The policy is also clear that if Mr. Heniser did

[8] MCL 15.240(1); MSA 4.1801(10)(1).

[9] MCL 722.26; MSA 25.312(6).

[10] Whether Heniser actually had to live at the insured premises on a full-time basis, or whether intermittent occupancy was sufficient, is not in dispute. In light of the fact that this policy was issued with the knowledge that Heniser used the property as a vacation home on an irregular and sporadic basis, it is likely that Frankenmuth Mutual contemplated noncontinuous occupancy.

not "reside" at the insured property at the time of the loss, the property is not a "residence premises," as defined by the policy, and the policy does not cover the loss.

Mr. Heniser alternately contends that several courts have found similar language to require only that the insured fulfill the policy requirement at the time the policy was entered. In these cases, the language was viewed as an affirmative warranty and not a continuing warranty.[11] See *Reid v Hardware Mut Ins Co of Carolinas, Inc,* 252 SC 339; 166 SE2d 317 (1969); *Ins Co of North America v Howard,* 679 F2d 147 (CA 9, 1982). Mr. Heniser and the author of the dissenting opinion in the Court of Appeals rely heavily on the South Carolina Supreme Court opinion in *Reid.*

In *Reid,* the insureds purchased a homeowner's insurance policy that described the insured premises as a "one story frame constructed, approved roof, *owner occupied,* one family dwelling." *Id.* at 342 (emphasis added). While the policy was in

---

[11] An express warranty is a

written statement or stipulation inserted on the face of the policy itself, or clearly embodied therein as a part thereof by proper words of reference, whereby the insured expressly agrees that certain facts are, or shall be, true . . . of which the validity of the contract of insurance depends . . . . [7 Couch, Insurance, 2d (rev vol), § 36:2, p 423.]

An affirmative warranty is

one which asserts an existing fact or condition, and appears on the face of the policy, or is attached thereto and made a part thereof. [*Id.,* § 36:4, p 426.]

Promissory or continuing warranties

are those where the insured undertakes to perform some executory stipulation, as that certain acts shall or will be done, or that certain facts shall or will continue to exist. [*Id.,* § 36:5, p 427.]

effect, the Reids sold the home and the buyer
assumed the mortgage. The policy was not trans-
ferred, however, and the Reids remained the
named insureds. Five months after the sale, while
the insurance policy was still in effect, the house
was destroyed by fire. When the Reids filed a claim
of loss with the insurer, the company refused to
pay contending, among other things, that the pol-
icy did not cover the home because it was no
longer "owner occupied." *Id.* at 343. The trial
court found in favor of the Reids, and on appeal,
the Supreme Court of South Carolina affirmed. In
concluding that "owner occupied" was only an
affirmative warranty that the Reids occupied the
home at the time the policy was issued, the court
stated:

> Thus, a description of a house in a policy of
> insurance, as "occupied by" the insured, is a de-
> scription merely and is not an agreement that the
> insured should continue in the occupation of it.
> *Joyce v Main Ins Co,* 45 Me 168 [(1858)]. *O'Niel v
> Buffalo Fire Ins Co,* 3 NY 122 [(1849)]. A statement
> in an insurance policy that the property is occu-
> pied by the insured as a dwelling for himself and
> family, is not a warranty that it shall continue to
> be so occupied but is only a warranty of the
> situation at the time the insurance is effected.
> *German Ins Co [of Freeport, Ill] v Russell,* 65 Kan
> 373; 69 P 345; 58 LRA 234 [(1902)]. [*Id.* at 346-347.]

The United States Court of Appeals for the
Ninth Circuit addressed a situation similar to *Reid*
in *Ins Co of North America v Howard, supra.* The
insureds had purchased a homeowner's policy cov-
ering the "described residence *owned and occupied*
by the insured exclusively for residential pur-
poses." *Id.* at 148 (emphasis added). After the
death of Mr. Howard, Mrs. Howard moved most of

her possessions to another residence and began to rent the home. Two weeks after Mrs. Howard rented her home, it burned. Mrs. Howard filed a claim under the policy, and the company denied coverage, contending that because Mrs. Howard had rented the home, it was no longer "owned and occupied by the insured." The district court agreed with the insurer but, on appeal, the court of appeals reversed. Relying on *Reid, supra,* the Ninth Circuit stated that the policy

> contains a representation that the insured is the homeowner and occupant and that the insurance is not being purchased by a third party. It does not impose a condition requiring the policyholder to continue to live at the residence. [*Id.*]

The court went on to conclude that if an insurer wishes to terminate coverage upon rental of the home, the policy must give the insured unequivocal notice of this condition.[12] *Id.* at 149.

Because *Reid* and *Howard* are distinguishable from this case, a different result is warranted. Unlike the language in *Reid* and *Howard,* the phrase "where you reside" in the policy before us is not a warranty but a statement of coverage.

---

[12] Heniser erroneously contends that the Oregon Court of Appeals recently found similar language to be ambiguous in *Farmers Ins Co of Oregon v Trutanich,* 123 Or App 6; 858 P2d 1332 (1993). The policy language in *Trutanich* defined "residence premises" as "the one or two family dwelling and separate structures or that part of any other building where you reside, and shown in the Declarations." *Id.* at 13. As explained below, this language is significantly different from the policy language in this case. The *Trutanich* court did not find the language ambiguous, but concluded that either "where you reside" only modified "part of any other building" and not "family dwelling," or that even if it did modify "family dwelling" it was still "insufficient to take the house out of coverage." *Id.* The *Trutanich* court relied heavily on *Howard, supra,* and cited the proposition found in *Howard* that if the insurer intended for coverage to terminate on the rental of the property, the exclusion should be clearly delineated.

E

The policy language, and the context in which the language is found in the policy before us, differs from that in either *Reid* or *Howard.*[13] The language at issue is found in the definitions section. "[W]here you reside" is not used to describe the dwelling but is an independent part of the definition of "residence premises." To be a "residence premises" the insured must reside at the insured premises *and* the property must be shown as the residence premises in the declarations portion of the policy.

Were we to accept the argument that this definition is merely an affirmative warranty, we would freeze coverage at the time the policy is entered into and render subsequent events irrelevant. Applying this method of contract interpretation to other definitions in the policy before us illustrates the unreasonable result of such an approach. For

---

[13] Both *Reid* and *Howard* found the language in the respective policies to be merely descriptive of the structure covered by the policy. It is crucial, however, to closely examine the exact policy language and context in which the language is used. In *Reid* at 342, the policy described the building insured as a "one story frame constructed, approved roof, owner occupied, one family dwelling." The "owner occupied" language was in a list of statements describing the building covered by the policy. Read in context, it is clear that "owner occupied" was simply a description of the dwelling in the same way that stating the building had an "approved roof" merely commented on the structure at the time the policy was created.

Likewise, in *Howard*, the policy stated that it covered the "described residence owned and occupied by the insured exclusively for residential purposes." Again, the "owned and occupied by the insured" language is reasonably understood as merely a description of the dwelling insured. The language immediately follows the term residence and is not set off by any punctuation.

*Howard* is further distinguishable in that the court was concerned that the policy did not clearly indicate that rental of the insured property could terminate coverage. *Id.* at 149. While it might not occur to an insured that rental of his property could affect his homeowner's policy, it is a vastly different case when the insured sells the property.

example, the policy between Heniser and Franken-
muth states:

> "Insured" means you and residents of your
> household who are:
> a. your relatives; or
> b. other persons under the age of 21 and in the
> care of any person named above.

If the definition of "insured" does not govern the
scope of the policy on a continuing basis, an in-
sured's relatives, who live with the named insured
on the date the policy is entered into would con-
tinue to be covered by the policy even if they
moved out of the insured premises the day after
the policy is issued. The analysis becomes even
more strained as applied to the definition of "in-
sured location." The policy defines an "insured
location" as, among other things, "individual or
family cemetery plots or burial vaults of an
insured . . . ." Thus, relatives who lived at the
insured premises on the day the policy was en-
tered into would have their burial vault covered
until the policy expires, even if they are no longer
residents at the insured premises. We conclude
that the definitions are properly viewed as estab-
lishing whether the property at issue is covered by
the policy at the time of the loss and not as
warranties.

We agree with those courts that have found the
exact language of this policy to unambiguously
require the insured to reside at the insured prem-
ises at the time of the loss. The Georgia Court of
Appeals recently interpreted identical policy lan-
guage and found that the policy set forth two
requirements: that the insured reside at the prop-
erty at the time of the loss, and that the property
be described as the residence premises in the

declarations portion of the policy. *Georgia Farm Bureau Mut Ins v Kephart,* 211 Ga App 423; 439 SE2d 682 (1993).

In *Kephart,* the plaintiff and her husband purchased a homeowner's insurance policy that contained the same definition of "residence premises" as the policy before us. The couple's marriage deteriorated, and the plaintiff moved out of the house. In October, 1990, the couple was divorced, and in November, 1990, fire destroyed the home in which the ex-husband was living. The plaintiff filed to recover for the loss, but the insurance company denied coverage, arguing that Kephart did not "reside" at the premises at the time of the loss. The Georgia Court of Appeals agreed with the insurance company and held:

> Because the evidence established that Kephart did not live at the house . . . at the time of the fire, and the policy unambiguously required her, as named insured, to live at the "residence premises" in order for coverage to be effective, no coverage existed for Kephart's claim.[14] [*Id.* at 425.]

A different panel of the Georgia Court of Appeals subsequently decided that similar language

[14] In *Kephart,* two judges concurred specially, stating that the special conditions found in the policy, requiring the "residence premises [to be] the only premises where the named insured or spouse maintains a residence" further strengthened the decision that the insured had to reside at the insured premises at the time of the loss. *Id.* at 424. The concurrence rejected the insured's argument that because the special conditions were written in the present tense, the requirements only had to be fulfilled at the time the policy was entered. In rejecting this argument, the concurring judges noted that neither the common law or the legislature required there to be an express warning that coverage depended on the continued compliance with the policy requirements. *Id.* at 427.

The absence of the exclusive residency condition in the present policy does not alter our decision that the definition of "residence premises" unambiguously requires the insured to reside at the insured premises when the loss occurs.

was merely a description of the property. *Hill v Nationwide Mut Fire Ins Co,* 214 Ga App 715; 448 SE2d 747 (1994). However, the difference between the policy language in *Hill* and the language of the policies in *Kephart* and the instant case, combined with the rationale employed by both panels, fortifies our decision that the contract before us does not employ the term "residence" as merely a description of the property. The policy in *Hill* defined "residence premises" to mean

> the one- or two-family dwelling, other structures and grounds; or that part of any other building *where you live,* shown as the residence premises on the Declarations. [*Id.* at 715. Emphasis added.]

The policy language in *Hill* is similar to that found in *Howard.* The language following immediately after the word "building" is not preceded by a comma or a semicolon, and the connector "and" does not precede the requirement that the property must also be shown as the "residence premises" in the declarations. In reaching its decision, the court in *Hill* specifically relied on the difference in punctuation and the lack of the word "and" to distinguish the language in *Hill* from the policy language at issue in *Epps v Nicholson,* 187 Ga App 246; 370 SE2d 13 (1988).

The policy in *Epps* defined "residence premises" as "the one or two family dwelling, other structures, and grounds or that part of any other building where you reside and which is shown as the 'residence premises' in the Declarations." *Id.* at 246. The *Epps* court found the policy unambiguous and held that the policy "contained two requirements for coverage: first, the dwelling must be the place where the insured resides; and second,

the dwelling must be shown as the 'residence premises' in the Declarations." *Id.* at 247. The second requirement was fulfilled, but because the property was rented and the insured did not reside at the insured premises, the policy did not provide coverage. *Id.*

Finally, in contrasting the policy language used in *Hill* with the language used in *Kephart* (the exact language found in this policy), the *Hill* court stated that the policy language and sentence structure found in *Kephart* "clearly require that whether the covered premises is 'a. the one family dwelling . . .' or 'b. that part of any other building,' the insured must reside there."[15] *Hill, supra* at 718.

The policy language in this case is different from that in *Hill* and akin to the language analyzed in *Epps* and *Kephart.* The policy language following the word "building" is preceded by a semicolon and the word "and" connects the requirement that the insured reside at the premises and the requirement that the property be shown as the "residence premises" in the declarations. Thus, we find that the policy does not cover the destruction of the building unless the insured resides at the insured premises when the loss occurs.

F

Heniser's final contention, that the definition of "residence premises" deceptively places a coverage exclusion in the definitions section of the policy, is without merit. Heniser's reliance on *Powers v DAIIE, supra,* and *Transamerica Ins Corp of America v Buckley,* 169 Mich App 540; 426 NW2d

---

[15] We express no opinion on how we would interpret the policy language found in *Hill.*

696 (1988),[16] is misplaced. Both of these cases dealt with a situation in which the insurer purported to extend coverage in one portion of the policy and excluded such coverage in another section, or where the insurer defined certain terms in variance with their common meaning. That is not the case in the policy between Heniser and Frankenmuth.

The definition of "residence premises" does not vary from its common meaning. This term is clearly defined on page two of the policy and there is no contrary definition elsewhere in the policy. The terms used in the definition of "residence premises" are clear. As noted by the Court of Appeals in *Curry, supra,* the general or popular definition of "reside" requires actual occupancy, unlike the legal meaning that allows an intent to occupy the property in the future to suffice. The term "reside" is clear to most laypersons and, in a homeowner's policy, ambiguity is not created by reference to legal theories outside the frame of reference of the ordinary insured.

To determine whether an insured is entitled to insurance benefits, we employ a two-part analysis. "First, we determine if the policy provides coverage to the insured. If it does, we then ascertain whether that coverage is negated by an exclusion." *Buczkowski v Allstate Ins Co,* 447 Mich 669, 682; 526 NW2d 589 (1994). It is the insured's burden to establish that his claim falls within the terms of the policy. *Arco Industries Corp v American Motorists Ins Co,* 448 Mich 395; 531 NW2d 168 (1995). *Harvey Oil Co v Federated Mut Ins Co,* 837 F Supp 242, 244 (WD Mich, 1993). As explained above, once Heniser ceased to "reside" at the

---

[16] Heniser erroneously relies on *Yahr v Garcia,* 177 Mich App 705; 442 NW2d 749 (1989), for support of this proposition as well. Reliance on *Yahr* is improper because we reversed the Court of Appeals decision in *Yahr* and agreed with the dissenting opinion that there was no deceptive placement problem. 436 Mich 872 (1990).

insured premises, the policy no longer covered the property, and we need not examine whether the policy excludes coverage. Policy exclusions are based on the presumption that the insured already has established that the policy covers the property in question. The question then becomes whether this particular loss is excluded from coverage for some reason. In this case, the policy did not apply, and destruction of the building, regardless of the cause, would not have been covered.

III

Coverage in this case is predicated on two separate requirements: the insured must reside at the insured premises, and the premises must be listed in the declarations section. We find that this policy admits of but one interpretation and is not ambiguous or fatally unclear. See *Allstate Ins Co v Goldwater,* 163 Mich App 646, 648; 415 NW2d 2 (1987). Heniser did not "reside" at the premises at the time of the fire. Thus, the property was no longer a "residence premises," and the policy does not provide coverage for the destruction of the building.

We affirm the decision of the Court of Appeals.

BRICKLEY, C.J., and CAVANAGH, RILEY, and WEAVER, JJ., concurred with BOYLE, J.

LEVIN, J. (*dissenting*). The question presented is whether a homeowner's insurance policy covers a dwelling described in the policy that is sold by the insured between the date the policy is issued and the date of a fire. I would hold that the policy provides coverage although the dwelling was sold before the fire.

The policy issued by defendant, Frankenmuth Mutual Insurance, states that the insurer covers "the dwelling on the residence premises shown in

the Declarations."[1] "Residence premises" is defined as the "one-family dwelling" "where you reside and which is shown as the 'residence premises' in the Declarations."[2]

The house owned by plaintiff, Richard J. Heniser, was a one-family dwelling, and it was shown in the Declarations. Heniser, however, sold the dwelling, November 1, 1988, on land contract, between September 28, 1988, when the homeowner's policy was renewed for an additional year, and January 12, 1989, the date of the fire.

### A

The majority holds that the "policy is unambiguous,"[3] and that "where you reside" speaks not only as of the date the renewal certificate of insurance was issued by the insurer or the date it became effective, September 28, 1988, but also unambiguously as of the date of the fire, January 12, 1989, with the result that because Heniser ceased to

---

[1] The policy provides:

SECTION I - PROPERTY COVERAGES
Coverage A - Dwelling
We cover:
1. the dwelling on the residence premises shown in the Declarations, including structures attached to the dwelling . . . .

[2] The policy provides:

DEFINITIONS

\* \* \*

8. "residence premises" means:
   a. the one family dwelling, other structures and grounds; or
   b. that part of any other building;

where you reside and which is shown as the "residence premises" in the Declarations.

[3] *Ante,* p 157.

reside at the dwelling described in the Declarations after he sold the dwelling on land contract, the dwelling was no longer covered for fire as residence premises.

The words "where you reside" are in the present tense. Had Heniser read the homeowner's policy when he received the renewal certificate, as this Court has cautioned insureds to do, he would understandably have concluded that the dwelling was insured because that is where he resided at the time he received the renewal certificate.

In the unlikely event that it then crossed Heniser's mind to think about whether he would be insured were he to sell the dwelling at some future date—as it happened a few months later—he, a layman not seeking to find a hidden meaning, would again understandably have concluded that the dwelling would be covered throughout the one-year renewal term.

If "where you reside" were truly "unambiguous" as the majority holds, there would be no need to add "at the time of the loss" following "reside" or "residence premises" in the majority opinion.[4]

The words "at the time of the loss" do not appear in the policy. The majority points to no other words that "unambiguously" indicate that "where you reside" speaks as of the time of the

---

[4] The majority writes:

The policy is also clear that if Mr. Heniser did not "reside" at the insured property *at the time of the loss,* the property is not a "residence premises," as defined by the policy, and the policy does not cover the loss. [*Ante,* pp 163-164. Emphasis added.]

Heniser has not, and cannot, demonstrate that the policy covers the destruction of the building. The policy in this case, read as a whole, is unambiguous and does not cover the loss because the property was not a "residence premises" *at the time of the loss. [Ante,* p 161. Emphasis added.]

loss rather than as of the date a certificate or a renewal certificate of insurance is issued or becomes effective.[5]

The differing views expressed in the majority and dissenting opinions in the Court of Appeals, and in the cases relied on by the dissenting Court of Appeals judge and the majority in this Court, also suggest that the meaning of "where you reside," and whether those words speak as of an indefinite future date of loss, is ambiguous.

### B

The homeowner's policy of insurance does not require an insured to notify the insurer of a change in occupancy or of a sale. The insured is only obliged, within sixty days *after a fire loss,* and then only after the insurer so requests, to notify the insured of "changes in title or occupancy of the property during the term of the policy."[6]

---

[5] To be sure, the persons who, as members of the homeowner's household, are additional insureds for particularly defined coverages may change during the term of the policy. *Ante,* pp 167-168. It does not follow that whether the dwelling is covered is also transient.

[6] The policy provides:

SECTION I - CONDITIONS

\* \* \*

2. Your Duties After Loss. In case of a loss to covered property, you must see that the following are done:

\* \* \*

g. send to us, within 60 days after our request, your signed, sworn proof of loss which sets forth, to the best of your knowledge and belief:

(1) the time and cause of loss;

(2) the interest of the insured and all others in the property involved and all liens on the property;

(3) other insurance which may cover the loss;

(4) changes in title or occupancy of the property during the term of the policy . . . .

C

We all agree that "where you reside" speaks unambiguously—and means that the insured must actually reside in the dwelling—as of the date a certificate or renewal certificate of insurance is issued or becomes effective. I disagree with the majority's conclusion that "where you reside" also speaks unambiguously as of some indefinite future date, following issuance of the certificate or renewal certificate—requiring the insured to actually reside in the dwelling on the future date—when a fire loss may occur.

I conclude that because "where you reside" is present tense, and an ordinary layman insured who receives a renewal certificate and then resides in the insured dwelling who reads the policy when issued would understandably conclude he is covered for fire loss throughout the one-year term of the policy, and because the policy does not oblige the insured to notify the insurer of a change of occupancy until *after a fire loss,* it is at least ambiguous whether "where you reside" speaks as of an indefinite future date after issuance requiring the insured to actually reside in the dwelling when a fire loss may occur.

Because, as the majority acknowledges, "[a]mbiguous provisions in an insurance contract are construed against the insurer and in · favor of coverage,"[7] the ambiguity whether "where you reside" speaks as of an indefinite future date, and means that coverage is eliminated unless the insured continues to reside in the dwelling when a fire loss occurs, should be resolved in favor of providing coverage protective of Heniser's substan-

[7] *Ante,* p 160. The majority cites *Group Ins Co of Michigan v Czopek,* 440 Mich 590; 489 NW2d 444 (1992), and *Powers v DAIIE,* 427 Mich 602, 624; 398 NW2d 411 (1986).

tial insurable interest in the dwelling although he had sold the dwelling on land contract before the fire.[8] Frankenmuth has offered no underwriting reason necessitating or justifying automatic cancellation of coverage upon a sale. Rarely, if ever, will it make an underwriting difference to an insurer whether a dwelling is insured for fire loss under a homeowner's policy or a standard fire insurance policy.

I

Reading a homeowner's policy as eliminating coverage when a dwelling is sold, although the dwelling continues to be occupied by a responsible person,[9] adds a condition of coverage respecting fire loss neither set forth in the standard fire insurance policy nor permitted by the essential insurance act, and is not valid or enforceable.[10]

A

When the insurer issued the policy of insurance to Heniser, the Insurance Code provided that an insurer shall not issue a fire insurance policy that does not conform to all its provisions with the

---

[8] This Court pertinently observed:

> Recognizing the disparity in the bargaining positions of the companies which write insurance and the consumers who buy the policies, both the statutory law and judicial decisions have aimed at making certain that the interests of every insured are protected. [*Morgan v Cincinnati Ins Co*, 411 Mich 267, 275; 307 NW2d 53 (1981).]

[9] There is no suggestion that the risk was increased by the sale to Heniser's land contract vendee, or that he was a person with a prior arson or bad risk history or otherwise would not have been an eligible person within the meaning of the essential insurance act. See n 15.

[10] See *Borman v State Farm Fire & Casualty Co*, 446 Mich 482; 521 NW2d 266 (1994).

standard policy set forth in the Insurance Code.
The standard policy does not provide that coverage
is eliminated in the event of a change of owner-
ship of the insured property. The standard policy
provides, rather, that a fire insurer is not liable for
loss "while a described building, whether intended
for occupancy by owner or tenant, is vacant or
unoccupied beyond a period of sixty consecutive
days . . . ."[11]

The majority's reading of the homeowner's pol-
icy as eliminating coverage upon a sale of the
dwelling—although the dwelling continues to be
occupied—adds a condition of coverage not set
forth in the policy.

In *FBS Mortgage Corp v State Farm Fire &
Casualty Co of Bloomington, Illinois,* 833 F Supp
688 (ND Ill, 1993), the homeowner's policy pro-
vided coverage for a dwelling in language parallel-
ing the language of the instant homeowner's pol-
icy, including the definition of "residence prem-
ises" as the dwelling "where you reside." The
insurer denied coverage because neither insured
person had resided in the dwelling during an
eight-month period before the fire. One of the
insureds had transferred her interest to the other
insured, and the transferee-insured had been ar-
rested and incarcerated in the Cook County Jail
until after the fire. The court concluded that "resi-
dence premises" was ambiguous with respect to
the insured's claim, and that the construction
urged by the insurer was unenforceable because it
compromised the public policy set forth in the
standard fire insurance policy.[12]

---

[11] MCL 500.2832; MSA 24.12832.

[12] The pertinent language of the Michigan and Illinois standard fire
policies is the same. The court said:

The Standard Policy sets forth a limited number of exclu-

The only provision of the standard fire policy that bears on the extent of coverage following a sale of the property is the "insurable interest" provision, providing explicitly, what the law would imply, that the obligation of the insurer shall not "in any event [be] for more than the interest of the insured." The homeowner's policy similarly provides that the insurer is not liable beyond the amount of the insured's interest at the time of loss.[13]

The provision in the homeowner's policy regarding insurable interest thus parallels a similar provision in the standard fire insurance policy.

sions for restricting coverage. The only exclusion involving occupancy provides that an insurance company will not be liable for losses occurring when "a described building, whether intended for occupancy by owner or tenant, is vacant or unoccupied beyond a period of sixty consecutive days." (Standard Policy, lines 28-35). Illinois courts have construed "vacant or unoccupied" to mean "that [a] dwelling was without an occupant at the time of the loss, that is, that no person was living in it." [Citations omitted.] Accordingly, the Standard Policy's exclusion is inapplicable in this case because Cabrera lived at the Insured Premises until December 15, 1990—15 days before the fire.

State Farm's proposed interpretation of the Homeowner's Policy denies coverage in the absence of continuous, physical inhabitation of the Insured Premises by the Named Insured at the time of loss. Hence, State Farm broadens the Standard Policy's exclusions by requiring physical occupation of the Insured Premises for a period of *less* than 60 days before the loss. In doing so, State Farm unlawfully compromises the Standard Policy by diminishing the coverage it provides to achieve uniformity and concurrence of contract. [*FBS Mortgage, supra*, p 695. Emphasis in original.]

[13] The policy provides:

SECTION I - CONDITIONS
1. Insurable Interest and Limit of Liability. Even if more than one person has an insurable interest in the property covered, we will not be liable in any one loss:

    a. to the insured for more than the amount of the insured's interest at the time of loss; or

    b. for more than the applicable limit of liability.

And the provision in the homeowner's policy requiring the insured to notify the insurer after loss of changes in title or occupancy parallels a similar provision in the standard fire policy.[14]

The homeowner's policy, consistent with the standard fire policy, thus reduces coverage only to the extent the homeowner ceases as a result of a sale to have an insurable interest. Heniser clearly had a substantial insurable interest represented by title to the dwelling and the land contract seller's interest.

B

The essential insurance act[15] provides that a homeowner insurer "shall not refuse to insure, refuse to continue to insure, or *limit the coverage* available to an eligible person [defined as an 'owner-occupant'[16]] for home insurance, except in accordance with underwriting rules"[17] (emphasis

[14] The standard policy provides that within sixty days after loss the insured shall render proof of loss stating, among other things, "any changes in the title, use, occupation, location, possession or exposures of said property since the issuing of this policy . . . ." MCL 500.2832; MSA 24.12832.

[15] 1979 PA 145; MCL 500.2101 *et seq.*; MSA 24.12101 *et seq.*

[16] "Eligible person," for home insurance, means a person who is the owner-occupant or tenant of a dwelling of any of the following types: a house, a condominium unit, a cooperative unit, a room, an apartment; or a person who is the owner-occupant of a multiple unit dwelling of not more than 4 residential units. [MCL 500.2103(2); MSA 24.12103(2).]

The term "owner-occupant" is not statutorily defined.

An "eligible" owner-occupant does not include a person convicted of arson, or a person who has committed other specifically defined transgressions. MCL 500.2103(2); MSA 24.12103(2).

[17] As a condition of maintaining its certificate of authority, an insurer shall not refuse to insure, refuse to continue to insure, or limit the coverage available to an eligible person for home insurance, except in accordance with underwriting rules established pursuant to this section and section 2119. [MCL 500.2117(1); MSA 24.12117(1).]

added) that are put in writing, filed with the Commissioner of Insurance, and applied uniformly.[18] The act permits a homeowner insurer to terminate insurance "due to reasons which *conform* to the underwriting rules of the insurer" (emphasis added), effective not earlier than thirty days after notice to the insured of a specific reason for termination that so "conforms" to the underwriting rules of the insurer.[19]

Frankenmuth did not refuse to insure or refuse to continue to insure Heniser's dwelling. Rather, it issued a renewal homeowner's insurance certificate to then owner-occupant Heniser in September, 1988, over a month before he sold the dwelling on land contract and three and a half months before the fire. Owner-occupant Heniser, however, may have ceased to be an owner-occupant within the meaning of the essential insurance act when he sold the dwelling on land contract and ceased to occupy the dwelling.

Nor did Frankenmuth avail itself of the provi-

---

[18] MCL 500.2119; MSA 24.12119.

[19] (1) Except as provided in subsection (2) or (3), a termination of insurance shall not be effective unless the insurer, at least 30 days prior to the date of termination, delivers or mails to the named insured at the person's last known address a written notice of the termination. The notice shall state the effective date of termination and each specific reason for the termination.

(2) A notice of termination mailed or delivered within the first 55 days after the initial issuance of a policy may be made effective not less than 20 days after the date of mailing or delivery of the notice.

(3) A notice of termination for nonpayment of premium shall be effective as provided in the policy.

(4) A termination of insurance shall not be effective unless the termination is due to reasons which conform to the underwriting rules of the insurer for that insurance.

(5) This section shall not authorize an insurer to terminate an automobile insurance policy in violation of chapter 32. [MCL 500.2123; MSA 24.12123.]

sion in the essential insurance act permitting termination of coverage by notifying Heniser that his homeowner's insurance was terminated because he had vacated the dwelling after selling it on land contract. Frankenmuth claims rather that it can "limit the coverage available"[20] to Heniser by the "where you reside" clause.

The essential insurance act permits a homeowner insurer to adopt an underwriting rule based on "[t]he *unoccupancy* of a dwelling for more than 60 days, if there is evidence of an *intent to vacate or keep the premises vacant or unoccupied,* as to the applicant or *insured.*"[21] (Emphasis added.)

The construction of "where you reside" urged by Frankenmuth and adopted by the majority conflicts with the foregoing provision of the essential insurance act. Both address the same subject matter: elimination of coverage upon unoccupancy and vacation of the dwelling or intent to vacate by the insured. The construction adopted by the majority conflicts with the statute because a homeowner insurer may not adopt an underwriting rule permitting it to refuse to insure or renew or terminate coverage simply because the owner-occupant has vacated the premises; the underwriting rule only may provide for elimination of coverage if there has also been "unoccupancy of a dwelling for more than 60 days."[22]

The construction adopted by the majority also conflicts with the essential insurance act because it eliminates coverage without the thirty days' written notice to the insured required by the essential insurance act, after a homeowner's policy has been issued to an eligible owner-occupant,

[20] See n 17.
[21] MCL 500.2117(2)(h); MSA 24.12117(2)(h).
[22] See text accompanying n 21.

stating a reason for termination that "conforms" to such a permitted underwriting rule.[23]

Such notice of termination is critical because it would have put Heniser, in the instant case, on notice of the need to obtain alternative insurance, and would have provided adequate time for him either to require the land contract purchaser to obtain his own homeowner's policy or other fire insurance, as required by the land contract, showing Heniser as an additional insured as land contract seller, or to obtain in his own name a standard fire insurance policy to protect his insurable interest as land contract seller.

This summary disposition record does not justify elimination of Heniser's insurance coverage.[24] It does not appear whether Frankenmuth's underwriting rules provide that it will not insure or renew insurance where there has been such unoccupancy and vacation of the dwelling or intent to vacate by the insured, and whether such an underwriting rule has been filed with the Commissioner of Insurance. Frankenmuth did not avail itself of the provision in the essential insurance act permitting it to terminate a homeowner's policy for a reason that conforms to its underwriting rules by providing thirty days' written notice to Heniser of termination of coverage for the reason that he had vacated the dwelling.[25]

---

[23] See n 19.

[24] The filing of such an underwriting rule would not have validated the "where you reside" clause, which literally eliminates coverage automatically upon unoccupancy and vacation of the premises, even though the premises have not been unoccupied for more than sixty days.

[25] See n 21.

It is again relevant that the homeowner's policy does not require an insured to notify the insurer of a change in occupancy or of a sale, and requires notice only after a fire loss of a change in title or occupancy. See text accompanying, and n 7.

To be sure, Heniser was aware of the change in occupancy and of

II

Courts in other jurisdictions have considered whether "where you reside" or similar language eliminates coverage when the homeowner sells or ceases to occupy the dwelling.

A

In *Reid v Hardware Mut Ins Co of Carolinas, Inc,* 252 SC 339, 346; 166 SE2d 317 (1969), the policy described the dwelling as "owner occupied." In *Ins Co of North America v Howard,* 679 F2d 147, 148 (CA 9, 1982), the policy provided coverage for "the described residence owned and occupied by the insured exclusively for residential purposes . . . ."

In *Reid,* the insured had sold the property but remained liable on the mortgage. The Supreme Court of South Carolina concluded that "owner occupied" was a "description merely and is not an agreement that the insured should continue in the occupation of it":

> A statement in an insurance policy that the property is occupied by the insured as a dwelling for himself and family, is not a warranty that it shall continue to be so occupied but is only a warranty of the situation at the time the insurance is effected. *German Ins Co [of Freeport, Ill] v Russell,* 65 Kan 373; 69 P 345; 58 LRA 234 [(1902)].
>
> There is no provision in the policy contract that the dwelling would be "owner occupied" during the term of the insurance contract nor any requirement that if the premises are otherwise occu-

the sale on land contract. But so, too, is an insured who fails to pay premiums timely. Nevertheless, the statutes provide, as here, that the insurer must give written notice of cancellation or termination and the reason therefor—notice that Frankenmuth failed to give in this case.

pied than by the owner, notice of such change of occupancy or use would be given to the insurer. [252 SC 346-347.]

In *Howard,* the insured had rented her home for one year following her husband's death.[26] The United States Court of Appeals for the Ninth Circuit said:

> We believe the Oregon Supreme Court would adopt the same reasonable, enlightened view of the effect of the "owned and occupied" language which the South Carolina court has adopted. We conclude that, under Oregon law, if an insurance company wishes to have a homeowner's policy terminate upon rental of his home, it must so provide explicitly and unambiguously in the policy of insurance, and that a mere statement in the policy that he is the owner and occupant is wholly insufficient for this purpose. Under any proper view of the law, a homeowner is entitled to be given specific and unequivocal notice in the insurance policy that his coverage will be forfeited upon his rental of his home so that if a death in the family, other changes in family or economic circumstances, or even just a desire to change his way of life, causes him to move from his home, he may make whatever other insurance arrangements are necessary to protect the assets which often represents all the remaining proceeds of a lifetime of labor.[27]

The majority states that *Reid* and *Howard* are distinguishable because of the differences in the insurance policy language in those and the instant cases, and that "the phrase 'where you reside' in the policy before us is not a warranty but a

[26] The majority states that it would be faced with a different situation if the insured continued to retain the right to reside at the residence premises, as where the insured moves out before the dwelling is sold. *Ante,* p 160, n 5.

If "where you reside" were truly unambiguous, coverage would not depend on factual differences.

[27] *Id.* at 149.

*statement of coverage.*"[28] (Emphasis added.) In *Reid,* the court paraphrased and did not quote the policy language. But in *Howard,* the "owned and occupied by the insured" policy language is set forth under "coverages."[29] The policy language in *Howard* is as much "a statement of coverage" as the policy language in the instant case.[30]

The Oregon Court of Appeals in *Farmers Ins Co of Oregon v Trutanich,* 123 Or App 6; 858 P2d 1332 (1993), relied on *Howard.* The dwelling and other property was damaged by a tenant who was renting part of the house and who was engaged in a methamphetamine operation. Paralleling the definition in the instant case, "residence premises" was defined as "the one or two family dwelling and separate structures or that part of any other building *where you reside,* and shown in the Declarations." (Emphasis added.) Noting the possible interpretations of "where you reside," including some confusion concerning which structure the language was meant to modify, the court concluded that "where you reside" was "insufficient to take the house out of coverage."[31]

A United States District Court in Virginia in

[28] *Ante,* p 166.

[29] The policy in *Howard* provided:

I. COVERAGES
Coverage A. Dwelling. Coverage A insures, subject to the Exclusions and limitations stated herein, the described residence owned and occupied by the insured exclusively for residential purposes . . . . [*Id.* at 148.]

[30] See n 1 for the policy language in the instant case, which is similarly set forth under "coverages."

[31] The majority seeks to distinguish *Trutanich* on the basis that the clause there at issue was different than the one at issue in the instant case. But the clause in *Trutanich,* defining "residence premises" as the dwelling "where you reside," is substantively the same as the language in the instant case. *Ante,* p 166, n 12.

The majority continues that *Trutanich* was primarily concerned with which type of dwelling "where you reside" modified. The major-

*Rush v Hartford Mut Ins Co,* 652 F Supp 1432
(WD Va, 1987), also relied on *Reid* and *Howard* in
finding coverage. The policy spoke of "the de-
scribed residence owned and occupied by the in-
sured exclusively for residence purposes . . . ."[32]
The court said that "[t]he mere statement that the
insured property is a dwelling used principally for
dwelling purposes is not clear and explicit enough
to create a warranty."[33] The court characterized
the clause as a representation required to be true
at the time the policyholder applied for insur-
ance.[34]

B

Much of the majority's analysis hinges on deci-
sions of the Georgia Court of Appeals. These deci-
sions—*Epps v Nicholson,* 187 Ga App 246; 370
SE2d 13 (1988), *Georgia Farm Bureau Mut Ins Co
v Kephart,* 211 Ga App 423; 439 SE2d 682 (1993),

ity ignores the import of the court's conclusion that there was
coverage and its relevance to the instant case by suggesting that
*Trutanich* really is a case about word placement and that it should be
applied only in a case with similar facts (because it concerned the
rental of insured property, as did *Howard*).

[32] *Id.* at 1435. The insured house was rented to a business that
intended to use it to house truckers. Part of the building was used for
business purposes.

[33] *Id.*

[34] The Missouri Court of Appeals concluded similarly in *Huffstutter
v Michigan Mut Ins Co,* 778 SW2d 391, 394 (Mo App, 1989). A
clubhouse on the property adjacent to the insured's house was dam-
aged by hail. Although it did not cite *Howard* or *Reid,* the Missouri
court examined similar policy language that stated that the "de-
scribed dwelling" was "occupied principally as a private residence."
*Id.* at 393. The court held that there was coverage, rejecting the
insurer's construction that the clubhouse must be occupied and used
by the insureds as their primary place of residence. The court refused
to read an occupancy requirement into the policy, and construed the
policy as requiring only that the clubhouse be used as a dwelling
house.

and *Hill v Nationwide Mut Fire Ins Co,* 214 Ga
App 715; 448 SE2d 747 (1994)—consider "where
you reside,"[35] the language in this case.

In the first case, *Epps,* the Georgia court said "it
is clear" that "the dwelling must be the place
where the insured resides. . . ."[36] In *Kephart,*[37] the
policy contained the same language as in *Epps,*
with a "special provision," not included in the
policy in *Epps* or in Heniser's policy, providing
that " 'the residence premises [must be] the only
premises where the named insured or spouse
maintains a residence other than business or farm
properties.' "[38] The court found no coverage be-
cause the "plain and ordinary" meaning of the
policy "requires that the named insured live in the
residence listed on the declarations page and that
the listed residence be the named insured's only
residence."[39]

The Georgia court found, however, for the in-
sured in *Hill,* on the basis of what it perceived to
be different policy language. The definition of "res-
idence premises" was "the one- or two-family
dwelling, other structures and grounds; or that
part of any other building *where you live,* shown

---

[35] The policy definition described "residence premises" as "the one
or two family dwelling, other structures, and grounds or that part of
any other building where you reside and which is shown as the
'residence premises' in the Declarations."

[36] *Id.* at 247. The court denied coverage because the dwelling had
been rented to a tenant.

[37] The insured had bought a house with her ex-husband before the
divorce. When the marriage dissolved, the insured instructed the
insurer to remove her ex-husband's name from the policy. The in-
sured did not keep the house as part of the divorce (and thus the only
spouse with an insurable interest was not a named insured), moving
out of state, but leaving some possessions, after which the ex-husband
moved into the house with his girlfriend. The house and garage were
destroyed by fire a month after the divorce was finalized.

[38] 211 Ga App 424.

[39] *Id.* at 424-425. .

as the residence premises on the Declarations."[40]
(Emphasis added.) The court contrasted the language in *Hill* with the *Epps* language, noting differences in punctuation and grammar.[41] The court also distinguished *Hill* from *Kephart* on the basis that the policy language was different and the *Kephart* policy contained the special provision requiring that the residence premises be the insured's sole residence.[42]

In these cases, the Georgia courts, by couching their analyses in terms suggesting that the meaning is obvious and clear, protected their interpretation without having to offer reasoned justification.[43] The extent to which the cases relied on by the majority have made fact-specific distinctions is evidenced by the Georgia court's strained attempt to distinguish its decision in *Hill* from its decisions

---

[40] 214 Ga App 715. The facts were only briefly noted by the court. They were that the insureds had a policy on their home, from which they moved in June 1992. The house was fire damaged in August 1992.

[41] The court said:

One major difference in the wording of the *Epps* and instant clauses is the inclusion of the word "and" between "where you reside" and "which is shown . . . [on the declaration page]" in the *Epps* clause. This language makes it clear that in the *Epps* policy, *both* situations are required. The conjunctive "and" does not, however, appear in the instant clause. To the contrary, the instant clause includes a disjunctive "or," which is not present in the *Epps* clause at all. Additionally, the inclusion of the semi-colon in the instant clause clearly shows that "where you live," without any intervening punctuation, is only intended to modify "that part of any other building." [*Id.* at 717.]

[42] *Id.* at 718.

[43] The United States Court of Appeals for the Eighth Circuit, in *Nancarrow v Aetna Casualty & Surety Co,* 932 F2d 742, 744 (CA 8, 1991), held for the insurer where the house was abandoned by the insured, the policy had been canceled for nonpayment of the premium (the plaintiff contending that the cancellation was ineffective), and no one having lived in the house for a number of years. Similarly, in *Shepard v Keystone Ins Co,* 743 F Supp 429 (D Md, 1990), no one had lived in the house for a number of years.

in *Epps* and *Kephart.* Were the clauses at issue in those cases truly unambiguous, there would have been no need to resort to analysis concerning the placement of conjunctions and colons. The majority engages in the same strained analysis in the instant case, attempting to show that, by placement of conjunctions and colons, the insurance policies are distinguishable.[44]

### III

The majority asserts that its conclusion that the policy is unambiguous is strengthened by the provision in the land contract between Heniser and the purchaser obligating the purchaser to keep the buildings insured in the name of the seller against loss by fire and windstorm. The majority argues that "Heniser included this language" to protect himself against loss by fire, and that the inclusion of this language "indicates Heniser understood that his existing insurance policy would not cover the property after he sold it . . . ."[45]

Heniser did not include this language. It is standard boilerplate language in the printed land contract that he and the purchaser signed. This is not a case of an owner who did not recognize the need to insure the property from loss by fire. Heniser had purchased a homeowner's policy. There is no reason to suppose that if he in fact "understood that his existing insurance policy would not cover the property after he sold it"[46] that he would not have obtained substitute insurance either by seeking to enforce the land contract provision or otherwise obtaining insurance to protect his interest.

[44] *Ante,* p 170.
[45] *Id.,* p 162.
[46] *Id.*

Frankenmuth was not a party to the land contract, and the language of the land contract has no bearing on the meaning of the language of the homeowner's policy.

For reasons that probably do not appear on this record, when Heniser entered into the land contract he did not require the purchaser to provide evidence of fire insurance, which would generally be in the form of a homeowner's policy with a loss-payable clause added showing that Heniser was an additional insured as the land contract seller. Heniser's failure to require proof of insurance might have been attributable to ignorance on his part, which would be especially understandable if he was not represented by counsel. His or his counsel's ignorance or neglect tells us nothing about the correct construction of "where you reside" in homeowner's policies.

IV

The majority's construction of "where you reside" leads to harsh results not mandated by any rule of construction or underwriting risk. A homeowner's policy ceases to apply if an uninformed homeowner vacates the dwelling without causing policies of insurance to be rewritten. This is a windfall to insurers, to be availed of adventitiously. In the instant case, it was a fallback from its unsuccessful effort to withhold payment on factual grounds.[47]

MALLETT, J., concurred with LEVIN, J.

---

[47] Frankenmuth also contended that Heniser's claim was barred because of fraud and false swearing with respect to the value of personal property damage by the fire. The circuit judge ruled against Frankenmuth on this issue.